Estate of G. M. Topper, Deceased, T. J. Topper, Executor v. Commissioner. T. J. Topper v. Commissioner.
Estate of G. Topper v. Commissioner
Docket Nos. 5011 and 5012.
United States Tax Court
1946 Tax Ct. Memo LEXIS 113; 5 T.C.M. (CCH) 697; T.C.M. (RIA) 46193; August 8, 1946
*113 Herbert F. Baker, C.P.A., 525 Market St., San Francisco 5, Calif., and A. D. Schaffer, Esq., for the petitioners. T. M. Mather, Esq., and A. J. Hurley, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for 1941, $679.93 against G. M. Topper and $1,939.78 against T. J. Topper. The Commissioner disallowed a deduction of $4,524.77 in determining the deficiency against T. J. Topper. That action is assigned as error in the T. J. Topper petition. The Commissioner conceded in his brief that he erred as alleged. The actual amount paid was $4,607.10, but only $4,524.77 is claimed by the petitioner. Two issues are presented for decision. One is whether the Commissioner erred in his treatment of the sale of an apartment building. The other is whether he erred in holding that a part of the income of each petitioner was separate rather than community income. Findings of Fact T. J. Topper is an individual. G. M. Topper was his wife. She died on April 15, 1944 and the petition was filed by her executor. Each taxpayer filed a separate individual income tax return for the calendar year 1941 with the *114 collector of internal revenue for the first district of California. T. J. and G. M. Topper were married in 1917. They lived together incalifornia from that time until the wife died. G. M. had no property in 1917. T. J.'s net worth at that time was between $1,000 and $1,500. He was then engaged in operating a small sheet metal shop as sole proprietor. He owned no real estate at that time. The business was incorporated in 1922 at which time all shares of stock were issued in the name of T. J. Later he gave a few shares to employees. The corporation was dissolved at the end of 1936 and thereafter, through 1941, T. J. operated it as a sole proprietorship. The record does not show what became of the interests given to employees. The net worth of the business at the close of 1940 was about $50,000. G. M. worked in the business on a fulltime basis for several years after 1917. Thereafter she assisted occasionally. She was always interested in and familiar with the business. Her husband consulted her frequently in regard to the business. They had an unwritten understanding beginning shortly after their marriage that the business belonged to both in equal shares. The mother of G. M. acquired *115 an apartment house prior to 1930. The mother died in 1930 at which time G. M. and her brother inherited the property in equal shares. They operated the property as a partnership until it was sold in 1941. G. M. devoted her full time to managing the property both before and after her mother's death. There never was much income derived from the property. G. M. and T. J. had an unwritten understanding that the one-half interest in the property inherited by G. M. belonged equally to both G. M. and T. J. The apartment property, consisting of land, building and furnishings was sold as a unit on June 6, 1941. The price at which it was sold was $27,500. The petitioners each reported their 1941 income from all sources and their deductions upon a community property basis, i.e., each reported one-half thereof. The Commissioner, in determining the deficiencies, held that the apartment house was the separate property of G. M. and the other business was the separate property of T. J. He divided the income from the latter business into salary and return upon capital. He held that the salary was community income and the remainder was the separate income of T. J. He held that the sale of the *116 apartment property affected G. M. only and computed her tax liability thereon as follows: Buildings
Land
Cost basis - 1930
Value on 4-21-30 (date inherited by partners)
$26,999.42
$13,760.58
Value of furniture and fixtures
3,346.76
Total
$30,346.18
$13,760.58
Less depreciation: 1930 - (8 months)
$ 1,000.00
1931 to 1941
15,750.00
Furniture and fixtures
2,467.58
19,217.58
Adjusted cost basis
$11,128.60
$13,760.58
Selling price - 1941
$27,500.00
Less: Expense of sale
1,221.16
Net selling price
$26,278.84
17,407.10
8,871.74
Loss/gain on sale
$ 6,278.50
($4,888.84)
Amount to be taken into account (100%)
6,278.50
( 2,444.42) (50%)
Amount reported on partnership return
(6,756.34)
( 6,212.15)
Increase in ordinary income
$13,034.84
Decrease in long-term capital loss
$ 3,767.73
The correct basis of the building and land to the partners is held to be $40,760.00, the estate tax value, whereas a total basis of $60,330.30 was claimed on the partnership return. Cost basis is reduced by depreciation of $1,000.00 for 8 months in the year 1930, which amount was not claimed on the partnership return. Opinion
*117 MURDOCK, Judge: The petitioner has offered no evidence upon the issue involving the sale of the apartment property except the agreement of sale. The record shows what the Commissioner did. The petitioner argues that the property was sold as a whole and the Commissioner erred in treating the single transaction as two, a sale of the land at a loss and a sale of the building at a profit. While there was but one sale, nevertheless, the statute requires that the gain or loss on the building be computed separately from that on the land. That is due to the fact that the land is a capital asset, as defined in section 117 (a) (1) I.R.C. applicable to the calendar year 1941, and the building is not. A gain or loss on a capital asset held for a long time is recognized only in part in computing net income while a gain or loss on other property is recognized in full, no matter how long it has been held. Beulah B. Crane, 3 T.C. 585, reversed on other grounds 153 Fed. (2d) 504. The petitioner attacks only the principle of the Commissioner's determination on this point not the detail. The petitioner has not shown that the Commissioner erred in making *118 this adjustment. The respondent contends, with some justification in the record, that no agreement has been shown between this husband and wife to share as community property, property which was once the separate property of each spouse. He says the testimony is only that they "understood" or "believed" that under the law of California they owned in community, not that they had any actual agreement with each other upon the subject. He also points to the fact that T. J. reported his income for 1940 as if he alone owned the metal shop business. However, the evidence as a whole slightly preponderates in favor of the petitioners on this point. T. J. was 80 years of age at the time of the trial. He heard poorly. His wife was dead. He had relied upon others in filing his returns and knew little or nothing about them. However, he testified that he and his wife had an express agreement that they would share all of their property equally. There is other evidence of such an agreement and of a further agreement that the wife's interest in the apartment was also to be shared equally by her and her husband. We hold for the petitioners on this point. Cf. Estate of Joe Crail, 46 B.T.A. 658; *119 Herbert L. Damner, 3 T.C. 638. Recomputations upon an equal community property basis should be filed. Decisions will be entered under Rule 50.