OPINION. Leech, Jvdge: Respondent included the entire net income of Packard Berk and that of the Berk Finance Co. in the taxable income of decedent for the years 1939, 1940, and 1941 in determining the present deficiencies against decedent for each of those years. Petitioners contest this action. The basis upon which respondent supports the inclusion of Packard Berk income is that the evidence does not establish that a partnership, recognizable for Federal income tax purposes, existed during those years between decedent and his wife, Trixie I. Berk. Petitioners argue that such status is proved. We agree with respondent. Regardless of state law recognizing an arrangement as a partnership, it is now settled that, for Federal income tax purposes, such recognition is not controlling. The question is whether the decedent and his wife, Trixie I. Berk, the members of the alleged partnership, really intended to carry on business as such. And the answer to this question here turns on the answer to the query as to whether Trixie I. Berk invested capital, originating with her, or substantially contributed to the control of the business, or otherwise performed vital additional services. Commissioner v. Tower, 327 U. S. 280; Lusthaus v. Commissioner, 327 U. S. 293. It is conceded by petitioners that Trixie I. Berk did not contribute substantially to the control and management of the business, nor perform vital services for it. This restricts the issue to whether she “invested capital originating with her.” Petitioners contend that she did invest such capital in the amount of $120,000 which she borrowed on her note in that amount from Mellon Bank. Respondent argues that she was merely an accommodation maker on that note, while petitioners insist she was the real maker. Under the pertinent law of Pennsylvania, since Trixie I. Berk was a married woman, she was prohibited from becoming an accommodation maker of a note. Purdon’s Pennsylvania Statutes, title 48, sec. 320. If, however, she did sign the note as such a maker, the note “as to her [was] utterly void.” First National Bank of Verona v. Walsh, 349 Pa. 241; 37 Atl. (2d) 130. And the obligation to pay the note would be that of decedent alone under his specific pledge. In that event it would follow that Trixie I. Berk did not, in fact, borrow and, therefore, did not contribute $120,000, or any amount, to the business. Tinder Pennsylvania law “An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person.” Purdon’s Pennsylvania Statutes, title 56, sec. 66. Have petitioners carried their burden of proof and established that Trixie I. Berk was not an accommodation maker of this note? We think not. This is said despite any presumption created by Pennsylvania law that she was the real maker. That presumption, if such there be, must yield here to the stronger presumption of correctness attaching to the respondent’s determination. Rosemary Herold Lazard, 5 T. C. 277; affd., 153 Fed. (2d) 348, and cases there cited. In a recent Pennsylvania case, Western National Bank of York v. Levin, 331 Pa. 113; 200 Atl. 71, the Supreme Court of that state, in discussing the rule to be applied in determining whether a married woman was an accommodating party on a note, said: * * * But where the wife does not borrow and receive the money in such manner as to give her full control and dominion over it, where the right and the opportunity of free and voluntary disposition of it is denied her, where the money is paid directly to the accommodated party or for his use and benefit, where the transaction is but a device to evade the purpose and spirit of the statute by making it falsely appear that the wife is the real instead of merely the nominal actor, then, if the lender is a party to the scheme or aware of its true object and nature, the court will refuse him the right of recovery against the wife. * * * Here it is true that Trixie I. Berk possessed a very substantial personal estate. She could easily have borrowed this amount of money on her own collateral directly. But this was not done. After some discussion, as to the meaning of which the testimony, particularly that of Trixie I. Berk, is hazy, followed by arrangements at home with her husband, the decedent, she signed the note at the Mellon Bank as maker and endorser. Then, although her own collateral was readily available at that very bank, it was not used. Rather, the decedent, in writing, specifically pledged his own collateral to secure its payment. It is true, of course, that decedent and his wife, Trixie I. Berk, testified with varying degrees of clarity that this pledge was made because the bank already had in its possession, collateralizing notes of deceased, sufficient collateral of his to secure the note for $180,000, and that Trixie I. Berk agreed not only to save decedent from loss on account of that pledge, but also to turn over to him securities of hers to assure her performance, on that contract. But that agreement was not committed to writing. McEldowney, the only alleged witness thereto other than decedent and his wife, died before the hearing and did not testify. Moreover, there is no evidence to show that Trixie I. Berk ever thereafter carried out this alleged oral agreement by delivering any of her securities to decedent. Except as to the 1,000 shares of Burroughs Adding Machine stock, her securities were left in the joint safety deposit box of decedent and his wife at the Mellon Bank, with a “pad” of her powers of attorney, just as they had been before that time. True, these certificates were available to decedent, but they were not exclusively so. No change in their status occurred after her alleged oral contract with decedent, and her certificate for 1,000 shares of Burroughs Adding Machine stock was later removed from their joint box in the Mellon Bank and pledged by Trixie I. Berk at the Pitt National Bank to secure a personal note of hers at the latter bank. The testimony as to the discussions at home and at the Mellon Bank between decedent and his wife, Trixie I. Berk, which included Mc-Eldowney in the talks at the bank, is cloudy. Particularly is this so as to that of Trixie I. Berk. The note, the directions to McEldowney as to the disposition of its proceeds, and the check to Fitzpatrick for Packard Berk were prepared by decedent or somebody for him. The note and letter of directions were dated the same day, but, obviously, before the proceeds of the note became available, those directions as' to their disposition which she had already signed had been delivered to the bank. It seems Trixie I. Berk was told by decedent what to do, and she did it without having any clear understanding of just what was being done. Under the circumstances, we are less than convinced that she ever had any real control over those proceeds. It is equally doubtful that it was ever intended that Trixie I. Berk should ever pay this note or that she actually receive any valuable consideration for the proceeds of the loan. The $200,000 paid in as capital to Packard Berk was not sufficient to operate the business and large sums were obtained for that purpose upon the credit and pledge of securities belonging to decedent or in his name. The records of Packard Berk show that as of December 31,1938, the account of Mrs. Berk was overdrawn by $134,647.95 and the account of decedent by $124,643.16, so that more than the initial capital of $200,000 had in effect been withdrawn by them. Packard Berk, notwithstanding such heavy withdrawals, continued to operate and was able to operate only because of borrowed funds upon the credit established by decedent and the pledge of securities belonging to him. The debit balance in Mrs. Berk’s account was in part due to a charge on August 5, 1938, of $100,000 representing payment in that amount by Packard Berk on the principal of her $180,000 note. Packard Berk did not have accumulated profits in that amount. Its profits according to its records were only $5,711.99 for 1937 and it sustained a net loss of $43,202.73 for 1938. The payment by Packard Berk of $100,000 on her note must have been made either out of capital or loans obtained upon decedent’s credit. To explain payment of the notes of $250,000 and $150,000 of Packard Berk dated March 22, 1939, and June 30, 1939, respectively, with the proceeds derived from the certificates of deposit in the same amounts, Fitzpatrick testified that the certificate of deposit for $150,-000 came from the liquidation of Packard of Pittsburgh, but that Packard Berk on March 22, 1939, purchased from Packard of Pittsburgh the-certificate of deposit of $250,000 with funds obtained from the note of $250,000 of even date and that such certificate of deposit was purchased on or about July 31, 1939, from Packard Berk by decedent. However, there is no explanation as to why, if Packard Berk purchased the certificate of deposit on March 22,1939, with funds obtained from the $250,000 note of even date, the discount of $3,311.80 on such note was charged to the accounts of decedent and his wife. Neither is there any evidence that the certificate of deposit of $250,000 was ever carried as an asset on the records of Packard Berk. Furthermore, the evidence clearly shows that Packard of Pittsburgh did not assign or transfer the certificate of deposit of $250,000 to either Packard Berk or decedent, but that it held such certificate until September 22,1939, at which date it cashed the two certificates aggregating $400,-000 and the proceeds therefrom were deposited in its own bank account. From that account they were paid on the same date to decedent, who immediately used them to pay two promissory notes of Packard Berk in the aggregate amount of $400,000. To show payment of the notes, notes payable account on the records of Packard Berk was debited with $400,000. However, since the notes were not paid with assets or funds of Packard Berk, but with funds of decedent, no contra entry could be made thereto and therefore the account of decedent was credited with $300,000 and the account of his wife with $100,000. No reasonable explanation appears for this complicated series of transactions. In effect decedent actually paid from funds received in liquidation from Packard of Pittsburgh the $100,000 on his wife’s $180,000 note. The only other payment yet made on the $180,000 note, $50,000, was made by Berk Finance Co. from its capital, the source of which was decedent, directly, or indirectly through Packard Berk, or Packard of Pittsburgh. See discussion on second issue, infra. Certain it is, therefore, as we view the evidence, she has never yet actually paid anything on account of the note. Decedent started several years before their marriage to make substantial gifts to his wife. He continued this program after that event. Indeed, the testimony even of decedent is not inconsistent with the idea that the creation of the Packard Berk partnership was a part of that plan and that he intended to make her a gift of the partnership interest. Thus, he testified, inter alia: Upon consultation with my tax advisor, we decided that the best method of operating the business in the future would be to dissolve the corporation. Then in deciding what I should do — because I wanted to continue in business, having been in it a long time, and knowing that business more or less — I thought of taking my wife in as a partner; and as she had substantial amount of moneys in the form of stocks, I wanted to give her an opportunity to increase her earnings, so that she could be earning some money herself, and in the long run it would not come out of my estate, in the event of my death, and she would have that money in her own right. [Emphasis supplied.) Thus, assuming that she had an interest in the Packard Berk partnership, under Pennsylvania law, this record is far from convincing that it was not made to and received by her as a gift. And if that be so, obviously, she signed and endorsed the $180,000 note “without receiving value therefor.” Upon a careful consideration of all the evidence, we conclude that petitioners have not carried their burden of establishing that Trixie I. Berk was not an accommodation maker on the $180,000 note. They have thus failed to establish that she did invest capital originating with her in the partnership. Consequently respondent is affirmed in taxing the entire net income of Packard Berk for each of the taxable years to decedent. See W. M. Buchanan, 20 B. T. A. 210; Harry C. Fisher, 29 B. T. A. 1041, 1048; affd., 74 Fed. (2d) 1014; American Felt Co., 18 B. T. A. 504; affd., 58 Fed. (2d) 530. The second issue involves the taxability of the income of Finance Co. for the years in question, to decedent. We think the decision on this issue must follow the disposition of the first and that this is likewise taxable to decedent. Though the mechanics were somewhat complicated and nebulous, it is clear to us that Finance Co. was financed completely, directly or indirectly, through Packard Berk and Packard of Pittsburgh, by decedent. On August 5, 1938, Finance Co. paid $50,000 on the principal of Mrs. Berk’s $180,000 note and the amount of $50,000 was charged to her investment account. It is admitted that Finance Co. did not have earnings at that time in that amount, so that the $50,000, in large part at least, must have been paid out of capital. Since the initial capital of $50,000 had been advanced by decedent and the payment of $50,000 on Mrs. Berk’s note was charged against that amount, the payment of $50,000 by Finance Co. was in effect paid by decedent, as was the $100,000 paid by Packard Berk on such note on the same date. Furthermore, it appears that, in addition to the $50,000 advanced by decedent, he advanced further sums to Finance Co., since the evidence shows a payment of $10,500 to him on an advance by him to Finance Co. And, the evidence further shows that on August 5, 1937, Finance Co. received $25,000 from Packard of Pittsburgh, and in October 1939 $10,000 from Packard Berk. The business of Finance Co. consisted of merely the financing of long term automobile loans made by Packard Berk to its customers. Its business was wholly conducted by the decedent and personnel of the Packard Berk organization, who were paid by Packard Berk for those services. It is not disclosed whether Trixie I. Berk had any experience in this business, but the evidence is that she took no part in it. The business was conducted in the same premises in which that of Packard Berk was conducted. Even to the drawing of checks on its account, the business of Finance Co. was conducted wholly by personnel, including the decedent, of Packard Berk. Except for the signing of the application required to obtain the certificate from Pennsylvania authorities with respect to the conduct of the business under an assumed or fictitious name, Trixie I. Berk did nothing whatever either in establishing the business or in operating it thereafter. Certain, it would seem, that such formal compliance with state law would be no more controlling in fixing the legal characterization of the business here than in the case of an alleged partnership. And, the Supreme Court has ended controversy on that point. See Commissioner v. Tower, supra; Lusthaus v. Commissioner, supra. It was merely an adjunct or department of Packard Berk. Our conclusion is not altered, under the circumstances here, by the fact that upon liquidation the distribution was made to Trixie I. Berk. We think the facts here are not distinguishable in .substance from those in the case of Robert E. Werner, 7 T. C. 39. We there said: In the instant case, we think it is sufficiently clear that petitioner’s wife merely held a bare legal title to Tri-State’s tangible assets. We think it is equally clear that the income involved was not derived from mere ownership. Wilma Werner, though .the title holder, did not engage in the business which created the income. As we said in Wade Allen, supra [6 T. C. 899]: The determinative factor is that the wife of petitioner, alleged to have operated and conducted the business, as the manager and entrepreneur, did not devote any time in the taxable year to the business, and that she had not devoted any vital skill or capital or managerial services to the business in prior years. She had not developed the business. Petitioner did. * * * See also Albert Nelson, 6 T. C. 764, and Paul G. Greene, 7 T. C. 142. Petitioners have not met their burden of establishing that during the taxable years the decedent, for Federal income tax purposes, was-not in fact the owner of the business carried on by Finance Co. The respondent is affirmed in taxing the income of Finance Co. for the taxable years to decedent. Decision will be entered for the respondent.