Estate of Morgan C. Britt, Deceased, T. Mark Britt, Administrator v. Commissioner. Estate of M. C. Britt, Deceased, T. M. Britt, Administrator v. Commissioner.
Estate of Morgan C. Britt v. Commissioner
Docket Nos. 16184, 20083.
United States Tax Court
1950 Tax Ct. Memo LEXIS 302; 9 T.C.M. (CCH) 26; T.C.M. (RIA) 50013; January 13, 1950
Douglas D. Felix, Esq., Winter Garden, Fla., for the petitioner. Bernard D. Hathcock, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $18.80 in decedent's income tax for the fiscal year ended June 30, 1942, by an adjustment not in issue, and a deficiency of $123,436.03 in income tax for the period July 1-9, 1943, in part by including in income of the fiscal year ended June 30, 1943, and the period July 1-9, 1943, 20 per cent of the profits from a farming enterprise, which profits were credited to decedent's wife on the records of the business. Similarly the Commissioner determined a deficiency of $43,041.78 in estate tax, in part by adding to *303 gross estate the value of the 20 per cent interest in the enterprise claimed by the wife. Petitioner assigns error in these adjustments, contending that the wife's interest was bona fide and recognizable for tax purposes. Other assignments were not pressed. Findings of Fact T. Mark Britt, a resident of Winter Garden, Florida, is the son of Morgan C. Britt, deceased, and the administrator of his estate, petitioner herein. The decedent, a resident of Winter Garden, died on July 9, 1943. An estate tax return for his estate and income tax returns for the fiscal year ended June 30, 1943, and the period July 1-9, 1943, were filed with the collector of internal revenue for the district of Florida. Decedent was the husband of Susan B. Britt and the father of T. Mark Britt, Harold M. Britt and Mrs. Eula Britt Grant. For many years he engaged in raising celery and small quantities of beans and cabbage on a 500-acre farm in Orange County and on a 200-acre rented farm in Marion County, Florida. The farming operations were conducted under the form of a joint venture (hereafter called for convenience the first venture) with his two sons until November 26, 1937, when he organized Britt & Sons, *304 Inc., to conduct the business. Trucks, tractors, farm equipment and other property used in the farming, all of which were held in his name, together with certain liabilities, were transferred to this corporation. The recited net value of the transferred assets was $64,024.31, and in exchange therefor the corporation issued to Morgan C. Britt, the decedent, 28 of its 100 shares, and to each of Britt's three children, 24 shares. Morgan C. Britt was made president and manager. Britt & Sons, Inc., continued the farming operations on the 500-acre tract, to which it acquired title in a manner not shown, and on the 200-acre tract, which it rented from the Ocala Ice Manufacturing and Packing Co. At the end of 1940 it leased the 500-acre tract, its machinery and equipment to Morgan C. Britt and his three children and the four of them rented the 200-acre farm of the Ocala Co. Farming operations were continued as before during 1941, and the enterprise was treated by the four as a joint venture (hereafter called for convenience the second venture) in which Morgan C. Britt held a 40 per cent interest and each of the three children a 20 per cent interest. On December 27, 1941, the corporation *305 by formal deed sold to Morgan C. Britt, his wife, Susan B. Britt, and his three children for a recited consideration of ten dollars a one-fifth interest each in its 500-acre tract and in its trucks, tractors, farm equipment and other property, all of a recited value of $62,744.73, "Subject, nevertheless, to certain mortgages payable, notes payable, accounts payable and accrued liabilities" in an aggregate amount of $62,744.73. The five individuals then signed a lease of the 200-acre farm of the Ocala Co. for a rental equal to 10 per cent of net operating profit from the tract; the farming operations were continued as before during 1942 and until decedent's death, and the enterprise was considered by the five as a joint venture (hereafter called for convenience the third venture), in which Morgan C. Britt, his wife and his three children each held a 20 per cent interest. The parties discussed the various changes informally at the father's home, but no agreements were ever put in writing. Morgan C. Britt suffered with diabetes for twenty years prior to his death, but persisted in working as much as he was able in spite of the affliction. He lived with his wife and younger son Harold, *306 who was still in school in 1943. His elder son, Mark, lived about a mile away from his home, and his daughter resided in New York. Mark, who received a B.S. degree in agriculture from the University of Georgia in 1933, gradually took over management of the farming operations, the father being ill and sometimes confined to his bed. The two farms were located many miles from Winter Garden, and during the day Mark could not be reached by telephone, but his mother took messages for him, delivering them when he called by his father's home at night. After January 1, 1942, the father visited the farms only once; the mother went out several times. Both parents were kept informed about the business and gave Mark advice. The younger son Harold sometimes helped on errands and with payrolls. Over 90 per cent of the profits from the lands under cultivation was derived from celery. For this crop the ground is plowed and harrowed between October 1 and November 15; the seed is sown soon thereafter; transplanting is done in mid-February, and the celery is gathered in May and the first week of June. During the least active season Mark kept two foremen and ten men employed, increasing the number to *307 ten foremen and seven hundred men at harvest time. After being packed and loaded in cars, the celery was turned over by him to the M. C. Britt Produce Co., which marketed and distributed it for a percentage of the selling price. Substantially all shares of the Produce Co. were held since the initial issue in 1936 by Morgan C. Britt and members of his family in varying amounts, reflecting transfers within the family group. The Produce Co. often made loans to Britt & Sons, Inc., and to the farming enterprise, as it did to other producers who patronized its marketing services. These loans were needed to meet payrolls and debts. The Armour Fertilizer Works supplied on credit large quantities of fertilizer, for which bills were addressed to the five individuals and all five signed notes payable to the fertilizer company, secured by a lien on the crop. The two farms under cultivation were low, and considerable expense was also incurred in the drainage and pumping off of water from them. Weather and fluctuating market prices makes celery raising a very speculative business. Net profits from the two farms were about $54,000 for the first half of 1941; about $34,000 in 1942, and the income *308 experience of prior years gave no reasonable expectation that profits would ever exceed $150,000 in any year. In 1943, however, an abnormally large crop, favored by weather conditions, was produced on the two farms and at the same time the price of celery was double that ever before received. As a result the net profit for 1943 from the two farms was the unprecedented amount of $661,966.28. For the maintenance of records Morgan C. Britt employed an accounting firm of Orlando, Florida, which set up a bookkeeping system for all the Britt corporations and businesses, and made audits in June and December of each year. The system involved the use of loose leaves only. Journal vouchers for all the Britt enterprises were filed together and consecutively numbered; ledger cards were prepared from these, and year-end postings were made on sheets which were filed behind the ledger cards. As of the end of each year debits and credits, as disclosed on the loose leaves, were assembled in respect of each individual regarded as a participant in the farming venture, and recorded on a separate card under his name. For the year 1941 there were four such cards maintained in the names of Morgan C. Britt, *309 T. Mark Britt, Harold M. Britt and Eula Britt Grant. For the years 1942 and 1943 there were five such cards; one for each of the four named individuals and one for Susan B. Britt, with initial entry dated December 31, 1942. There was no change in the record system regardless of the changes in understandings under which the farms were being operated, and there were no loose-leaf entries indicating that Susan B. Britt or any of the other four had been charged with a proportionate part of the liabilities connected with the transfer of the assets of Britt & Sons, Inc. The individuals' cards never showed a contribution of capital but entries were made crediting shares of profits for the current year ended or for a preceding year. Thus by entry dated June 30, 1942, a credit of $6,102.10 on account of 1941 profits appears on the individual card of Morgan C. Britt, and credits of $3,051.04 each on the cards of T. Mark Britt, Harold M. Britt and Eula Britt Grant. The first entry on the card of Susan B. Britt, dated December 31, 1942, is a credit of $6,883.33 described as "profit for year ended 12/31/42." Credits on the same date and in the same amount appear on the cards of the other four *310 individuals. On all five cards appears a credit of $132,438.63 in 1943 "to close profit to Britt Farming Co. as of 7-9-43 date of death of M. C. Britt Partner." All of the foregoing entries bear the notation "Pribble Entry." Pribble was the auditor and directed that they be made. Early in 1942 Pribble prepared a "Statement of Condition" for the "Muck Farm Joint Venture" as of December 31, 1941, and in this he reflected the assets and liabilities transferred by Britt & Sons, Inc. This statement indicated total assets of $125,190.81 and a net worth of $73,572.69, consisting of $54,042.17 profit for the first six months of 1941 and $19,530.52 unearned surplus. The unearned surplus represented a write-up of the land transferred by Britt & Sons, Inc., from the value of $30,469.48 recited in the deed of conveyance to $50,000 which was deemed its true value. On the advice of his local physician Morgan C. Britt on November 25, 1941, consulted a specialist in internal diseases who gave him a medical examination and put him on a diet to reduce his weight. He again consulted the specialist on December 6, and a vitamin supplement was prescribed, but his diabetic condition did not appear serious. *311 On February 16, 1942, he mentioned pains in the chest; the specialist took a cardiogram which indicated heart trouble, but the patient expressed disbelief. A subsequent cardiogram on August 10 indicated that the heart condition had become serious; the specialist informed him of it; prescribed various medicines; forbade work and smoking. After apparent improvement in October a cardiogram taken on December 2 showed that his condition remained serious, but he never consulted the specialist again. He died on July 9, 1943. After the second visit to the specialist and on December 15, 1941, Morgan C. Britt applied to the Reliance Life Insurance Company of Pittsburgh, Pa., for a policy of $25,000 on his life. He stated on the application that he was then in good health to the best of his knowledge and had not consulted a physician within the past five years except for a fistula operation in 1939. The policy was issued, but after death the insurer contested liability, alleging fraudulent misrepresentations by the insured about the condition of his health, and by complaint filed November 9, 1943, in the United States District Court for the Southern District of Florida prayed that the policy *312 be cancelled and declared null and void. Before trial the controversy was settled by the insurance company's payment of $2,590.51 to the estate, and the suit was dismissed. The amount of the settlement exceeded premiums paid on the policy by about $1,000. For 1942 a partnership return of income was filed for the "Muck Farm Joint Venture," the third venture, showing a net income of $34,108.57 and long-term capital gain of $154.02, of which one-fifth, or $6,821.71 and $30.80, respectively, was distributable to Morgan C. Britt, his wife and each of his three children. It was stated that the partnership was organized on January 15, 1941, and that a return for it had been filed the preceding year. For the period January 1-July 9, 1943, a partnership return was also filed, showing a net income of $661,966.28 and long-term capital gain of $113.44, of which one-fifth, or $132,393.26 and $22.59, respectively, was distributable to each of the five individuals. It was stated that the partnership was organized January 1, 1941, and that a return for it had been filed the preceding year. In determining Morgan C. Britt's income for the fiscal year ended June 30, 1943, the Commissioner added to *313 income reported $6,883.32, and for the period July 1-9, 1943, he added $132,415.94. Both additions represented the amounts reported on the partnership returns as distributable to decedent's wife. In determining the estate tax on Morgan C. Britt's estate, the Commissioner increased the reported value of several parcels of land and included in gross estate a "40% interest in the partnership" so as to cover "the purported transfer of 20% interest to Susan B. Britt." He cited section 811 (a) and (c), Internal Revenue Code, as supporting the determination. Opinion Treating the decedent, Morgan C. Britt, as the owner of a 40 per cent interest in the third venture, the Commissioner added to the share of income reported as decedent's on the returns filed by the administrator for the fiscal year ended June 30, 1943, and the period July 1-9, 1943, the 20 per cent share of the venture's profits which had been credited on its records to the decedent's wife. Similarly he added to the reported value of decedent's gross estate the value of a 20 per cent interest in the venture which petitioner alleges belonged to the wife. Petitioner assigns error in these adjustments, contending that the wife's *314 interest and the income therefrom should be recognized as her property for tax purposes. In respect of the estate petitioner assigns seven errors in the value determined for various parcels of land and the value of the venture interest and in an eighth assignment charges error in the Commissioner's failure to deduct unpaid Federal income taxes from gross estate. But no reference to these assignments was made at the hearing or on brief, and we shall, therefore, not consider them. Under petitioner's theory decedent's wife, Susan B. Britt, acquired a fifth interest in the "Muck Farm Joint Venture" on January 1, 1942, by contributing an undivided fifth interest in the land, farming machinery and equipment transferred to her by Britt & Sons, Inc., on December 27, 1941, and an undivided fifth interest in the lease of the Marion County farm from the Ocala Co. He argues that this capital and her advisory services constituted a vital, income-producing contribution to the business so that she should be recognized for tax purposes as a bona fide partner or co-venturer by the tests approved in Commissioner v. Tower, 327 U.S. 280; Lusthaus v. Commissioner, 327 U.S. 293, *315 and Commissioner v. Culbertson, 337 U.S. 733. To buttress this conclusion, he urges further that as in Sinne B. Forsythe, 10 T.C. 417, the husband did not transfer the interest to the wife and hence there is no warrant for imputing to him its ownership and the income derived therefrom. Respondent argues to the contrary that petitioners' theory lacks factual support; that the so-called third venture was merely a continuation of the second; the oral agreement that decedent's wife should hold a 20 per cent interest represented a mere intra-family reallocation of the 40 per cent interest which decedent held in 1941, and such reallocation should not be recognized tax-wise under Helvering v. Clifford, 309 U.S. 331. He also points out that under Florida law a married woman could not become a partner, citing G.C.M. 2448, VI-2 C.B. 69. But it is settled that for classification as a corporation or partnership under the Federal revenue acts state law is not determinative. Commissioner v. Tower, supra; Francis A. Parker, 6 T.C. 974; *316 Willis B. Anderson, 6 T.C. 956. The evidence here indicates that prior to 1937 Morgan C. Britt had raised celery on the 500-acre farm, which apparently he owned, and on the 200-acre farm which was rented, using machinery and equipment held in his name. In this undertaking he was actively assisted by his elder son, Mark. In 1937 he incorporated the enterprise as Britt & Sons, Inc., and the land, machinery and equipment were transferred to the corporation - by a "joint venture" of himself and two sons, according to a recitation in the corporate minutes, but Mark testified that in fact all the property transferred was held in decedent's name. The corporation issued 28 shares to decedent and 24 shares to each of his two sons and daughter, and the enterprise was continued under the corporate form until the end of 1940. According to oral testimany the corporation on January 1, 1941, rented its properties to the four stockholders and the enterprise was thereafter continued in the form of a joint venture by the four. On December 27, 1941, the corporation executed a deed, purporting to sell its land and other property for a nominal consideration to decedent, decedent's wife *317 and his three children, subject to listed obligations exactly equal to the recited value of the property transferred. Thereafter the enterprise was continued as before and the income from it was equally divided among the five transferees. Respondent does not question the interests of the three children, and we shall, therefore, assume without deciding that their interests were properly recognizable for tax purposes. To overcome the determination that the wife's interest was not so recognizable, petitioner must affirmatively establish that she: "* * * in good faith and acting with a business purpose intended to join together [with her husband and children] in the present conduct of the enterprise * * *." [Commissioner v. Culbertson, supra.] As evidence of such intent petitioner stresses that she exactly like the other four, contributed to the business capital her fifth interest in the assets transferred by the corporation and in the lease from the Ocala Co. This argument disregards the fact that the other four had assets in the business substantially in excess of those *318 transferred from the corporation and that the wife had no interest in the corporation. If its transfer be treated as in effect a liquidation, she was not entitled to a share. By the terms of the instrument, it is true, the corporation purported to "sell" the assets, "subject" to liabilities exactly equal to their recited value. If the value recited be accepted - and there is no other evidence of value - the net worth of the transfer was nil. The same can be said of the wife's fifth interest in the lease, for no evidence even suggests that the rental terms were so favorable as to give the contract a value. We can not, therefore, find that the wife made any contribution to capital even if full recognition be accorded the conveyance and the lease. But subjecting the transactions to the close scrutiny which the marital relation of the parties invites, Helvering v. Clifford, supra, we are persuaded that they were lacking in substance. The wife's name appeared among the transferees for no ostensible reason other than to give color to petitioner's present contention; no property affected *319 originated with her; no written evidence indicates that she ever consciously assumed any obligations to which the properties were "subject". Her services in conveying messages to Mark can not be deemed of a business character, and while Mark testified categorically that she gave advice, he was unable to show that she was possessed of any technical training or commercial experience which would render such advice a vital service or that she exercised control in business matters. There was never a written agreement relating to her participation in the enterprise, and while recognition has been accorded a partnership based merely on an oral understanding of the parties, Weizer v. Commissioner (C.C.A., 6th Cir.), 165 Fed. (2d) 772; Sam Averbuch, 12 T.C. 32; R. F. Odle, 12 T.C. 201, such understanding must be convincingly established, L. C. Olinger, 10 T.C. 423, and supported by the parties' proper recognition of it on their records and in their conduct. H. A. Eckhard, 12 T.C. 384. There is no evidence here that fulfills this *320 requirement. Concerning the agreement Mark testified merely that his mother was "brought in" to a new joint venture formed on January 1, 1942; that she contributed a part of the lands and equipment transferred from the corporation, and got a 20 per cent interest. He then added with hazy inconsistency: "the four-way joint venture sold; * * * four people sold to five people, and the five people bought equal". His subsequent answers disclose only a confused conception of the alleged changes in ownership of the business, and the loose accounting system used is less than adequate to supply or reflect the parties' understanding. There were no books. Journal entries were made on separate sheets and assembled periodically by an auditor on separate account cards. There were individual cards for Morgan C. Britt and each of the three children at the beginning of 1942, and entries on these cards indicate credits of profits and withdrawals through the year. But no such card was prepared for Susan B. Britt until after the close of the year, and the only entry on it for 1942 is a credit of $6,883.33 profit, dated December 31. For 1943 there are entries of credits and withdrawals on her card as on *321 those of the others. But none of the cards contains any figure properly showing a capital account. We note further that assets of $125,190.81 are listed by Pribble, the auditor, on a "Statement of Condition" as of December 31, 1941, and that the list includes the assets of $62,744.73 transferred by the corporation on December 27, 1941. Pribble testified that the statement was made for convenience and was misleading as showing the corporate assets to be those of the venture allegedly ending on that date; that in fact they became the property of the enterprise by transfer of the five individuals on January 1, 1942, to the alleged last or third venture then beginning. We attach no weight to the "Statement of Condition" as evidence of ownership. But we regard it as a highly significant illustration of the parties' own failure to observe alleged transactions and agreements which petitioner would have the Commissioner respect. Analogously on the partnership returns of income for 1942 and the 1943 period the joint venture was reported as organized in January, 1941, not 1942, and various names were used in referring to it. On the lease from the Ocala Co. and on certain bills and documents *322 made for securing debts, the five individuals' names appear. These last documents are the only contemporary written evidence that Susan B. Britt had any connection whatever with the venture. So far as shown, not even the accounting records of the business disclose any such connection until the very end of 1942. On this record we can not find that she contributed any capital, rendered any vital services, exercised any control, or made any bona fide agreement to be a partner or joint venturer. We do believe that in informal family discussions a decision was reached to reallocate to her one-half of the income from Morgan C. Britt's 40 per cent interest, and this was done. But it had no effect on tax incidence. Cf. Nordling v. Commissioner (C.C.A., 9th Cir.), 166 Fed. (2d) 703; certiorari denied, 335 U.S. 817; Belcher v. Commissioner (C.C.A., 5th Cir.), 162 Fed. (2d) 974; certiorari denied, 332 U.S. 824; Benson v. Commissioner (C.C.A., 5th Cir.), 161 Fed. (2d) 821; Mauldin v. Commissioner (C.C.A., 4th Cir.), 155 Fed. (2d) 666; Floyd D. Akers, 6 T.C. 693. And the appearance of her name without *323 more on bills and notes is not adequate to support a finding that she held a 20 per cent interest. Cf. Estate of Ira L. Berk, 7 T.C. 928. Petitioner makes an alternative argument, difficult to follow, that the share of income credited to Susan B. Britt can not be imputed to Morgan C. Britt, because he did not purport to make any transfer to her. But as we hold that she acquired no recognizable interest at all, it follows that we recognize no diminution in Morgan C. Britt's existing 40 per cent interest, and consequently 40 per cent of the venture's profits were correctly included in his income by the Commissioner. While such a conclusion in respect of income is not necessarily incompatible with the transfer of a partnership or venture interest valid under state law, Commissioner v. Tower, supra, for the reasons above set forth we are unable to find on this record that there was any completed transfer of a part of decedent's interest to the wife or that the oral understanding was effective for vesting in her a bona fide interest in the venture. Accordingly we sustain the Commissioner's determination that the value of a 40 per cent interest is properly *324 to be included in decedent's gross estate. Cf. Ernest Strong, 7 T.C. 953. Decisions will be entered for the respondent.