THOMPSON, J.
 

 This Suit is to recover from Mrs. Lorena Coats, primarily, and from her husband, C. L. Coats, in the alternative, the sum of $20,-277.80, ■ being the consideration for which a note was executed by the husband, dated March 20, 1925, and payable December 20, 1925, to the order of the Coushatta Bank.
 

 The liability of the wife is claimed on the ground that her husband acted as her agent in managing her separate property and in his transactions with the bank and in the execution of the note alleged upon.
 

 It is further alleged that the debt sued upon inured to the special benefit of the separate estate of Mrs. Coats.
 

 It is further alleged that in February 18, 1925, just a month before the note sued upon was executed, Mrs. Coats ratified all of the actions of her said husband in trading and incurring the debt sued on, and appointed her husband as her agent,.which claimed ratification and appointment is as follows:
 

 “I hereby appoint C. L. Coats as my agent to handle my business, and ratify what has been done with you all and endorse all notes.”
 

 The instrument purported to be signed by Mrs. Lorena Coats, and was addressed to the Bank of Coushatta.
 

 Mrs. Coats, answering the petition, denied that she owed the plaintiff anything. She denied that her husband in. his dealings with the bank and in executing the note acted as her agent. She denied that she had ever ratified the action of her husband in contracting the debt sued on, and alleged that the instrument purporting to appoint her hue-
 
 *168
 
 "band as her agent and ratifying his past acts was not signed by her, and was a forgery. She denied having any knowledge whatever of the legal proceedings by which she was sent into possession of the property of her uncle, and denied the authority of • any person to execute any instruments in connection with any compromise relating to property acquired by her from her deceased uncle.
 

 She alleged that she turned all of her property over to her husband “to be managed by him for his own benefit and for the benefit of the family.”
 

 The answer of the husband admits signing the note sued,on', but otherwise follows substantially the answer of his wife.
 

 After trial the judge ad hoc rendered judgment against C. L. Coats for the amount sued for, but rejected all demands against the wife.
 

 The defendant C. L. Coats has not answered the appeal of the plaintiff; hence the judgment is final so far as the husband is concerned.
 

 The pleadings and oral and documentary evidence cover three typewritten volumes, but, when properly analyzed, there are but few seriously disputed issues of fact or questions of law.
 

 It may be stated at the outset as a legal proposition that a wife, whether separate in property or under the regime of the community, cannot bind herself or her separate property for the debts of the husband or of the community. This legal principle was not affected or modified by the Act No. 94 of 1916, as amended by Acts No. 244 of 1918 and No. 219 of 1920, which authorizes a married woman to contract debts and to bind herself with reference to her separate property.
 

 Another unquestioned principle of law is that, unless the wife reserves to herself the administration, or actually administers separately and alone her paraphernal property, it is presumed to be under the administration of the husband, for the benefit of the community. So that, when Mrs. Coats alleged in her answer and reiterated as a witness that she let her husband administer her property for the benefit of himself and the family, she was but announcing a recognized principle of law.
 

 If it should be found, therefore, that the debt was contracted by the husband under such circumstances, and that he was not acting as the specially authorized agent of his wife, and no part of the debt enured to the separate benefit of the property of the wife, then it is very clear that the wife could not be held for such debt.
 

 It seems that the defendants were married and lived under the regime of the community. The wife had no property, and the husband only an inconsiderable amount of personal property. They were permitted to occupy and to farm free of rent a plantation belonging to John W. Carnes, a bachelor uncle of Mrs. Coats.
 

 In December, 1922, Carnes made a donation to his neice of several plantations, and divided his cash on hand or in bank between Mrs. Coats, her husband, and a negro woman who was his concubine. Shortly after this donation Carnes died, leaving a last will and testament, in which Mrs. Coats was named universal legatee. This will gave Mrs. Coats an additional plantation and several thousand dollars in stock certificates. Her sudden and unexpected fortune amounted to approximately $150,000.
 

 In the last will Mr. Carnes gave to his concubine and to a son issue of the illicit relation which was known as his Red bayou place.
 

 
 *170
 
 He had previously given to the colored woman $1,000 in war saving stamps and a number of shares of the capital stock of the Guaranty Bank & Trust Company of Alexandria and the Louisiana Life Insurance Company of Shreveport.
 

 The will named C. B. Drangent executor without bond, and he was duly qualified as such.
 

 On January 26,1923, Mrs. Coats executed a power of attorney in notarial form duly authorized by her husband, in which she appointed H. W. Bethard, Jr., her agent, with full and complete authority to represent her in all matters and things-relating and appertaining to the succession of her uncle John W. Carnes, specially authorizing her agent to bring all suits that he deemed necessary and to make any compromises or settlements with any other heirs or legatees of said succession that he deemed expedient. She also specially authorized the agent to execute all instruments for and in her stead necessary to the completion of said compromise and settlement, and to accept all such instruments made to her in settlement of such compromises, settlements, and agreements.
 

 Acting under said power of attorney, Bethard, in conjunction with the executor, made a compromise with the colored woman, through counsel who had been employed to represent her, in which she was paid $4,500. There was $200 added to this amount to cover some expenses. There were no funds on hand to pay this amount, so the amount was obtained from the Coushatta Bank on a note signed by the executor and by Bethard acting for Mrs. Coats.
 

 The bank also advanced $2,500 to pay attorney’s fees for the succession, $600 executor’s commission, and $454.54 inheritance taxes.
 

 These several items aggregate the sum of $8,254.54.
 

 The compromise settlement with the colored • woman was presented to the court by the executor and was approved by the court. The colored woman relinquished all claims she and her son had under the will, and surrendered the savings stamps and stock certificates.
 

 Thereafter the executor was discharged, and Mrs. Coats was sent into possession of all of the property as universal legatee.
 

 In all matters relating to the settlement of the' estate, the compromise with the colored woman, the payment of the inheritance tax, the attorney’s fees, and the commissions of the executor and the borrowing of the money from the plaintiff bank, the agent Bethard and the husband were acting for and on behalf of Mrs. Coats. • And, as a result of these proceedings in which the said expenses were incurred, Mrs. Coats was sent into possession of the property left her by her uncle.
 

 It needs no citation of authority and no amount of argument to show that Mrs. Coats is liable for the several items named.
 

 She was the direct beneficiary of the services rendered and the sums advanced by the bank.
 

 It is conceded that these sums have never been repaid to the bank but have been carried over and form a part of the note herein sued on.
 

 This was so found and stated in the written opinion of the trial judge.
 

 The court in its opinion also says that either Mrs. Coats or the succession of Carnes owes the expenses incurred in settlement of the succession, which the court found to be $5,754.34 less the sum of $1,388 transferred to thé account of the executor. The judge, however, refused to condemn Mrs. Coats for these amounts, despite the fact that there was no longer any succession to respond to such
 
 *172
 
 claims, that Mrs. Coats was the direct beneficiary of such expenditures and had been sent into possession of the property, and despite the fact that the bank had never been paid or reimbursed.
 

 The question might well be asked, To whom isl the bank to look to for such payment, unless. to-'Mrs. Coats,' on whose behalf and for whose benefit the debt was created with the hank?
 

 We cannot agree with the trial judge in the conclusion that a debt contracted under such circumstances must be regarded as a debt due by the separate estate of the wife to be adjusted with the husband, though he has not paid it, whenever the community is dissolved.
 

 Our conclusion is that Mrs. Coats is liable to the bank for the several items we have named. The fact that the bank included these amounts in the note executed by the husband does not relieve the wife from liability. _ There was' no novation of the debt nor a substitution of one debtor for another.
 

 “Executing a new note in renewal of an old one does not novate the original debt or destroy the privilege securing the same.” Farmers’ Bank v. Belle Alliance Co., 142 La. 538, 77 So. 144, and authorities there cited.
 

 For the balance which goes to make up the sum total of the note alleged upon we are not disposed to hold the wife liable.
 

 These several items were made up of overdrafts of the husband, and the proof is not clear that he was acting as the agent of his wife, nor is it shown that any part of the •amounts which go to make up the note, other than the items we have mentioned already, inured to the separate benefit of the wife. It is true the president of the bank testified that Mrs. Coats repeatedly told him that her husband was acting as her agent, but she emphatically denies this, and her husband also denies that ¡he was acting as agent for his wife. It is true the husband acted as agent for his wife in the settlement of the succession and securing to his wife possession of the estate under the will, and he appeared a® agent for his wife in making several written leases and selling some of her timber, but those several particular and distinct acts of agency do not have thei effect of establishing an agency to manage and administer the property of his wife. Nor are such acts of agency inconsistent with the administration of the wife’s property for his own benefit and the benefit of the community.
 

 As we have seen, in the absence of any proof going to show that the wife administers her own property separate and alone from her! husband, the law presumes that the husband administers for himself and for the community, and all fruits and revenues fall into the community. All debts contracted by the husband under such circumstances are his debts or debts of the community, for which the wife cannot be made liable, unless it is clearly shown that such debt inured to her benefit or the special benefit of her separate property.
 

 We are satisfied, as was the trial-judge, that the preponderance of the evidence shows that Mrs. Coats signed the letter to the bank which we have copied in this opinion. -We attach- no significance, however, to that instrument. Thé appointment of the husband as agent was for the future, and could have no retroactive effect. It could not be interpreted as recognizing that the past transactions of the husband with the bank were made as agent for the wife and not by the husband individually.
 

 Nor can the instrument which is in such general terms bé considered or held to be a ratification of all or of any party of the debt due the bank which was not specially
 
 *174
 
 contracted in the interest of Mrs. Coats or for the benefit of her separate estate. Mrs. Coats, as we have seen, could not bind herself directly or indirectly for the debts of her husband or of the community.
 

 What is here said applies equally to the attempt by the wife to place a part of her property in the name of her husband to secure the debt of the bank. The sale by the wife to her husband and the execution of the note for $25,000 as the consideration of said sale was and is an absolute nullity. C. C. art. 2446.
 

 For the reasons assigned it is ordered that the judgment appealed from which rejected the demand against the wife be reversed and set aside, and it is now ordered that the Bank of Coushatta have judgment against the defendant Mrs. Coats for the sum of $8,254.54, with 5 per1 cent, per annum interest from March 20, 1925, till paid and that Mrs. Coats pay one-half of the costs of this suit in both courts.