HERBERT L. DAMNER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2376. Promulgated April 18, 1944.

*H. F. Baker, C. P. A.*, and *A. D. Schaffer, Esq.*, for the petitioner. *T. M. Mather, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: The basic question is the value of the petitioner's separate property, if any, on the date of the so-called transmutation agreement. If the petitioner was possessed of any separate property on that date, it is unquestioned that a gift of one-half of the value of that separate property was made, since the wife, by virtue of section 161 (a) of the California Civil Code, takes a "present, existing, and equal" interest in property coming into the community estate after the effective date of that statute, July 29, 1927.

The question is purely factual. The Commissioner has determined that the net worth of the petitioner's business at the time of the gift was approximately $127,000 and was the separate property of the petitioner. This determination was evidently based upon the income tax return for the fiscal year ended January 31, 1939, in which the income of the business was allocated between return on capital and compensation for services on the theory that the business was the separate property of the petitioner. He now contends that the return was erroneous in that respect and that $127,000 did not, in fact, represent his separate property.

Indicative of the plausibility of this contention is the fact that the business growth was due exclusively to the retention of profits in the business from year to year. Those profits were preponderately community property and were treated as such by the Commissioner in the final determination of tax liability each year from 1937 to 1939. Manifestly, to the extent profits representing community property were plowed back into the enterprise, it was not the separate property of the petitioner, but community property.

In the returns for each of the years in question the taxpayer apportioned the net profits of the business between income attributable to capital and income attributable to his services. The first, under the law of California, is his separate property and the latter represents community property. His method of allocation satisfied the Commissioner and is not here questioned. Over the three-year period a total amount of approximately $15,600 was thus allocated to separate income.

Closing agreements for all three years were entered into by the petitioner and the respondent. Only the agreement for the fiscal year ended January 31, 1939, discloses the actual recomputation of tax, and in this agreement the item representing income attributable to capital is left unaltered. From the comparatively small deficiencies agreed upon for the other two years, it is evident that there was, in those agreements, no substantial alteration of the separate income of the petitioner.

Thus, the aggregate separate income of the petitioner during the three-year period was not more than approximately $15,600. More than this, he could not separately have contributed to the expansion. The balance of the increase must be due to community earnings, which in this period totaled approximately $107,000.

Therefore, it seems inescapable that the petitioner's separate worth as of January 15, 1939, was not more than the sum of his separate net worth as of January 1936 and his separate income from that time to 1939, or approximately $42,960.07. One-half of this amount, or $21,480.03, was the value of the gift made to Mrs. Damner through the transmutation agreement.

A word concerning the contentions of the petitioner, which we have not chosen to adopt, may not be inappropriate. He has argued that he was possessed of no separate property as of the date of the trans-mutation agreement; first, because prior to that time there was an "understanding" between the spouses that all their property was held as community property; and, second, that in any event community property had been so commingled with the assets of the business as to make the whole community. In regard to the first contention, "the separate property of either or both spouses may be transmuted into community property and this may be done without the necessity of any written agreement providing the agreement or understanding to that effect is fully consummated." *In re Sill's Estate*, 9 Pac. (2d) 243. The only testimony on this point is to the effect that it was the intention of the husband that his wife should have an "equal partnership" in everything he possessed. Nothing shows that this intention was ever communicated to the wife; no discussion with reference to the property was ever had between them. We think that this evidence is inadequate to establish an understanding or agreement transmuting separate property into community property.

As to the second contention, the rule in California is to the effect that where separate and community property are commingled the burden is upon him claiming the separate property to establish the segregation. In the absence of the segregation, the whole will be treated as community. This is an extension of the general presump-

tion favoring community property, and between litigants in the courts of California is undoubtedly controlling. However, in this proceeding the taxpayer is confronted with the presumption of correctness attaching to the Commissioner's determination. The conflict of presumptions resolves itself in favor of the respondent, and the petitioner retains the burden of proof. *Shea* v. *Commissioner*, 81 Fed. (2d) 937.

One further question remains. The petitioner, thinking that no taxable gift had been made, claimed in his return no deduction under section 505 (a) (1) of the Revenue Act of 1932, as amended by section 301 (b) of the Revenue Act of 1935,[1] allowing a specific exemption of $40,000. He now claims the right to such deduction. It has been held that a donor who, under a mistaken conception of law, takes no part of the specific exemption in the computation of gift tax is entitled to claim the exemption in a proceeding for redetermination. *Amy Hutchison Crellin*, 46 B. T. A. 1152; *Richardson* v. *Commissioner*, 126 Fed. (2d) 562, affirming on this point 39 B. T. A. 927. The petitioner is entitled to the specific deduction of $40,000 by reason of which there is no taxable net gift and accordingly no deficiency.

Inasmuch as there is no deficiency in gift tax, the penalty must fall.

*Decision will be entered under Rule 50.*

---

[1] SEC. 505. DEDUCTIONS.

In computing net gifts for any calendar year there shall be allowed as deductions:
(a) Residents.—In the case of a citizen or resident—
(1) Specific exemption.—An exemption of $40,000, less the aggregate of the amounts claimed and allowed as specific exemption for preceding calendar years.