## ROSEMARY HEROLD LAZARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4688. Promulgated June 19, 1945.

*Sidney L. Herold, Esq.*, for the petitioner.
*Homer J. Fisher, Esq.*, for the respondent.

#### OPINION.

ARUNDELL, *Judge*: This proceeding involves a determination by the respondent of deficiencies in income tax for the calendar years 1940 and 1941 of $157.46 and $269.20, respectively.

Petitioner is a resident of the State of Louisiana and for the taxable years in question she and her husband filed separate income tax returns on a community property basis. The deficiencies mentioned resulted from several adjustments which the respondent made to the net income as disclosed by petitioner's returns. Only one of the several adjustments for each year is contested. The contested adjustment for each year was explained by the respondent in a statement attached to the deficiency notice as follows:

It is held that the amounts of $6,327.71 and $4,966.42, representing advance oil royalties received by you during the years 1940 and 1941, respectively, from property acquired by gift from your father, do not constitute a part of the acquets and gains of the marital community, but coming from your separately owned property are taxable to you individually.

The facts (except for the numbers given each paragraph and except for the last paragraph, which deals with an adjustment in the event of a Rule 50 decision) were stipulated as follows:

The petitioner, Mrs. Rosemary Herold Lazard, was married in 1927 to Jules C. Lazard, the marriage terminating only by the death of the husband in March of 1944.

In the years 1940 and 1941, respectively, the petitioner and her husband filed separate income tax returns with the Collector of Internal Revenue for the District of Louisiana, each treating all income as being that of the marital community, and each therefore reported one-half thereof. There was no antenuptial

contract between Mr. and Mrs. Lazard, and the marital community implied by the law of Louisiana existed between them.

In the year 1940, the taxpayer reported, among other income, the receipt of $6,327.71 of oil royalties as community income, and therefore included one-half thereof in her return. During the year 1941, she likewise reported the receipt by the community of oil royalties in the amount of $4,966.42. The Commissioner allowed the statutory percentage depletion, but held that the oil royalties were separate income of the taxpayer and not community income, and therefore for each of said years treated the entire amount of royalties, less depletion, as the separate income of the taxpayer. The entire controversy grows out of the treatment by the Commissioner of the royalties as separate, instead of community income.

All of the royalties in question were derived from and received by the taxpayer from a tract of land known as the Schuler-Triangle lease in Bossier Parish, Louisiana. Prior to 1936, Sidney L. Herold, the father of the petitioner, was the owner of an undivided one-fifth interest in the oil, gas and mineral rights in and to the said property, which consists of eighty acres, and joined in a lease thereof with his coowners of the said mineral rights to the Triangle Drilling Company. The said lessee proceeded early in 1938 to drill on the said land, and in that year succeeded in producing oil in paying quantities. During the year 1938, petitioner's father donated to her his undivided one-fifth interest in the minerals in the eighty-acre tract, subject to the lease of the Triangle Drilling Company. All of the royalties in question accrued from the production of oil by the said lessee on the said tract, and monthly checks therefor were sent by the lessee to the taxpayer, representing the proceeds of the royalty oil produced and sold under the regular form of division orders.

The checks for such royalty, payable to the order of the taxpayer, were endorsed by her and turned over to her husband for deposit in his bank account, and the proceeds thereof were commingled with his earnings and used indifferently for family expenses and other expenditures of debts incurred by husband and/or wife.

Other than as stated in the preceding paragraph, neither petitioner nor her husband performed any acts in regard to the income here in question or the property from which it was produced. During the taxable years 1940 and 1941 petitioner owned no other separate property than the oil property hereinabove mentioned.

The nature and extent of the community interest depends upon the state law. *Poe* v. *Seaborn*, 282 U. S. 101; *Commissioner* v. *Wilson*, 76 Fed. (2d) 766. Hence, in the instant proceeding we must look to the law of the State of Louisiana.

Article 2334 of Dart's Louisiana Civil Code Ann., 1932, provides in part as follows:

*Separate and common property of spouses.*—The property of married persons is divided into separate and common property.

Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.

\*    \*    \*    \*    \*    \*    \*

Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. \* \* \*

Under the above article it is conceded by petitioner that the subject matter of the gift, namely, the "undivided one-fifth interest in the

minerals in the eighty acre tract, subject to the lease" was petitioner's separate property. It was acquired "by donation made to  *  *  * her particularly."

The question here propounded is whether the royalties received by petitioner from her separate property are separate or community income.

In his brief respondent, to sustain his determination of the deficiencies, makes two contentions: (1) That the oil property which produced the income here in question was not "administered" by petitioner's husband or by him and his wife indifferently, but was administered by the wife "separately and alone" and, therefore, the income in question was the separate income of petitioner under Louisiana law. (2) That, even if the property in question was being "administered" by petitioner's husband or by him and his wife indifferently, it would make no difference, because oil royalties are a part of the realty and not rents and are the separate property of petitioner, just as the interest in the oil lease which she received as a gift from her father was her separate property.

Considering the first of the respondent's arguments, we note that the facts furnished us are meager. The parties have agreed, however, that the facts which are stipulated are all the facts relevant to this particular phase of the question.

The separate property from which the royalties in question were derived is referred to in the Louisiana Civil Code as the wife's "paraphernal" property. See articles 2335 and 2383 of the code, which are set out in the margin.[1] The wife has a right to administer personally her paraphernal property, without the assistance of her husband, but paraphernal property which is not administered by the wife separately and alone is considered to be under the management of the husband. See articles 2384 and 2385 noted in the margin.[2] Prior to the amendment by Act 286, 1944, which the parties do not consider as retroactive, article 2386 provided in part as follows:

*Fruits of paraphernal property—Ownership.*—When the paraphernal property is administered by the husband, or by him and the wife indifferently, the

[1] 2335 [2315]. *Separate property of wife—Dotal and paraphernal property.*—The separate property of the wife is divided into dotal and extradotal.

Dotal property is that which the wife brings to the husband to assist him in bearing the expenses of the marriage establishment.

Extradotal property, otherwise called paraphernal property, is that which forms no part of the dowry.

2383 [2360] (N 1574). *Definition.*—All property which is not declared to be brought in marriage by the wife, or to be given to her in consideration of the marriage or to belong to her at the time of the marriage, is paraphernal.

[2] 2384 [2361] (N 1576). *Wife's right to administer.*—The wife has the right to administer personally her paraphernal property, without the assistance of her husband.

2385 [2362]. *Wife failing to administer paraphernal property—Management by husband.*—The paraphernal property, which is not administered by the wife separately and alone, is considered to be under the management of the husband.

fruits of this property, whether natural, civil, or the result of labor, belong to the conjugal partnership, if there exists a community of gains. * * *

It is stipulated that a community of gains exists in the instant proceeding. Petitioner relies principally upon article 2385, *supra*, and upon *Bank of Coushatta* v. *Coats*, 170 La. 163; 127 So. 587, 589, where the Supreme Court of Louisiana said:

Another unquestioned principle of law is that, unless the wife reserved to herself the administration, or actually administers separately and alone her paraphernal property, it is presumed to be under the administration of the husband for the benefit of the community. * * *

For purposes of Federal taxation the determination of the Commissioner is presumptively correct and we think it is well settled that, when presumptions arising under local law clash with the presumption of correctness attaching to the Commissioner's determination, the conflict resolves itself in favor of the respondent and the petitioner retains the burden of proof. *Shea* v. *Commissioner*, 81 Fed. (2d) 937; *Herbert L. Damner*, 3 T. C. 638; *J. Z. Todd*, 3 T. C. 643. Hence, the petitioner must come forward with evidence for the purpose of establishing that the property in question was under the administration of her husband or was administered by him and the wife indifferently. We do not read *Howard* v. *United States*, 125 Fed. (2d) 986, as announcing a rule to the contrary.

The record is clear and uncontroverted that the petitioner acquired the oil interest by way of donation from her father and that the property was hers separately and alone. We assume that the interest stood as a matter of public record in her name. Monthly checks were sent by the lessee to the petitioner, who received and endorsed the checks. In view of the fact that the arrangements for the lease of the oil producing property and the disposition of the oil taken therefrom had been made and entered into prior to the time that the gift was made to petitioner, and since the parties in interest had apparently chosen to let those arrangements stand, there seems to have been little in the way of administrative action required on the part of the petitioner or her husband. Other than the receipt of the checks and the endorsement thereof by the petitioner, which in itself may or may not bespeak management and control, we find no acts of administration. We can not construe the fact that the money was thereafter turned over to the husband for deposit in his bank account, commingled with his earnings, and thereafter used indiscriminately for family purposes as meaning that the property was administered indifferently by petitioner and her husband. See *Lucas* v. *Commissioner*, 134 Fed. (2d) 319, where the proceeds were deposited in a joint bank account and expended for the benefits of the community, and *Guss* v. *Mathews*, 179 La. 1033; 155 So. 765, where some of the

checks, representing revenues derived from the wife's paraphernal property, were received and cashed by the husband. In that case the court pointed out that the fact that a husband collects rents from his wife's paraphernal property is no indication that the property is under his control and management.

In *Lambert* v. *Franchebois*, 16 La. 1, the Supreme Court of Louisiana stated:

It is perfectly clear, that the paraphernal property of a married woman is not bound for the debts contracted by her husband; and, that the fruits, proceeding from such property, do not belong to the community, unless the wife permits the husband to manage it.

We find no relevant changes in the Louisiana code provisions since the above decision was rendered, and in *Hill* v. *Abell*, 5 App. 500, in 1927, the Louisiana Court of Appeals (2d Cir.) quoted the above language and cited the case with approval. While the law is not free from doubt, we have concluded that the income in question is the separate income of the wife and taxable to her.

In the circumstances, it is unnecessary for us to consider the respondent's alternative contention that the royalties are not "fruits" within the meaning of article 2386, *supra*.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

BLACK, *J.*, dissenting: The separate property from which the royalties in question were derived is referred to in the Louisiana Civil Code as the wife's "paraphernal" property. See articles 2335 and 2383 of the code. "The wife has the right to administer personally her paraphernal property, without the assistance of her husband." Art. 2384, Dart's La. Civ. Code. "The paraphernal property, which is not administered by the wife separately and alone, is considered to be under the management of the husband." Art. 2385, Dart's La. Civ. Code. Paraphernal property is presumed to be under husband's management unless administered by wife separately. *Johns* v. *Race*, 18 La. Ann. 105; *Rachal* v. *Le Roux*, 18 La. Ann. 588. It will be presumed that the husband administered the paraphernal property unless the contrary is shown. *Gillet* v. *Deranco*, 6 La. Ann. 590; *Le Blanc* v. *Le Blanc*, 20 La. Ann. 206; *Bank of Coushatta* v. *Coats*, 170 La. 163; 127 So. 587.

In the *Bank of Coushatta* case, the Supreme Court of Louisiana said: "Another unquestioned principle of law is that unless the wife reserves to herself the administration, or actually administers separately and alone, her paraphernal property, it is presumed to be under the administration of the husband for the benefit of the community." I do not think the facts which are stipulated rebut the Louisiana

presumption that the husband administered the property in question for the benefit of the community. Cf. *Howard* v. *United States*, 125 Fed. (2d) 986.

In the *Howard* case there were two questions. The first one need not be stated. It was decided in favor of the United States and we are not concerned with it here. The second question was stated by the court to be: "Whether certain policies of insurance on the life of Howard, purchased during wedlock, were community property or were the separate property of decedent." The collector of internal revenue had held the policies were the separate property of decedent and had collected an estate tax accordingly. The estate of Howard was contending that the policies were the community property of Howard and his wife. The court in its opinion stated the facts which were in the record bearing upon this issue as follows:

> Howard was married in 1914 to the wife who survived him. The policies were taken out in 1917, and the annual premiums thereon were paid by checks drawn by Howard upon a bank account standing in his name. He was a man of considerable wealth and income before his marriage, and thereafter his wealth steadily increased, and his income each year substantially exceeded his expenditures. These facts were stipulated, and *no further proof* was submitted on the issue of the ownership of the policies. [Italics supplied.]

The court, in dealing with the issue which had thus been raised, pointed out that the collector of internal revenue, in collecting the taxes in question, had presumably acted within the law; that this was not a statutory presumption. The court further pointed out that under Louisiana law the funds on deposit in the bank to Howard's credit were presumed to be community property and, therefore, when the premiums were paid from these funds on deposit, they were paid with community funds, and that no evidence had been offered by the United States to rebut these facts or the inference therefrom. Among other things, the court said:

> State rules of property must be applied and enforced in proceedings under the revenue statutes in the absence of a conflicting federal law, treaty, or constitutional provision on the subject. Differences in state laws so as to be applied do not disparage the geographic uniformity of taxation requisite to constitutionality. Therefore, since the ultimate tax question here depends upon the ownership of the funds on deposit, and since the law of Louisiana is controlling, the disputable presumptions above mentioned are so bound together with local property rights that the failure to apply them would result in serious interference with the local substantive law.

The court thereupon decided the particular issue there involved in favor of the taxpayer, namely, that the policies of insurance were community property, thus giving effect to the Louisiana presumption in spite of the presumed correctness of the Commissioner's determination.

The facts in the instant case as to who was administering the wife's interest in the oil property are meager, but it has been stipulated that

these are all the facts. If it were not for this stipulation, I think I would conclude that petitioner should lose her case for failure to give us more facts. But where all the facts are given and these fall short of showing that the property interest was being administered separately and alone by the wife, then the Louisiana presumption comes into play and the finding should be that it was being administered by the husband or by him and his wife indifferently. There were no affirmative acts of management on the part of the wife that I can see. The lease which gave rise to the income had not been made by the petitioner. She had acquired the property subject to the lease. No act on her part was required as lessor. Her position was passive; she merely received checks, endorsed them, and turned them over to her husband to be used indifferently for family expenses. So far, therefore, from breaking down the statutory presumption, the stipulation of facts makes it clear, I think, that the wife did not manage the property "separately and alone." The wife's interest in the oil lease property as it was put to use was but the instrumentality for income for family support. If it be said that the petitioner's endorsement of the checks was management, that could not have been administration by her "separately and alone," since the same stipulation is to the effect that, upon endorsement, she turned the checks over to her husband to be used for community expenses. The two acts, it seems to me, can not be separated, but must be considered together.

Therefore, applying the rationale of *Howard* v. *United States, supra,* to the facts which have been stipulated, I think the decision should be for petitioner. If to apply the rationale of the *Howard* case to the facts in the instant case be said to be in conflict with our decision in *Herbert L. Damner,* 3 T. C. 638, and *Shea* v. *Commissioner,* 81 Fed. (2d) 937, then I think the rule of the *Howard* case is the sounder one and should be followed. Because I think the decision should be for the petitioner, I respectfully dissent.

Tyson, *J.*, agrees with this dissent.