Edward R. Tolfree v. Commissioner.
Tolfree v. Commissioner
Docket No. 40285.
United States Tax Court
T.C. Memo 1954-50; 1954 Tax Ct. Memo LEXIS 196; 13 T.C.M. (CCH) 493; T.C.M. (RIA) 54156; May 26, 1954, Filed David S. Galton, Esq., for the petitioner. Maurice E. Stark, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in the petitioner's income tax of $23,789.11 and a 5 per cent addition for negligence (under section 293(a)) of $1,189.46 for 1946 and a deficiency in income tax of $1,584.32 for 1947. The issues requiring decision are: (1) Whether assessment and *197 collection of the deficiency and addition for 1946 are barred by the statute of limitations; (2) Whether there was a gain in 1947 from the sale of real property and, if so, how much; (3) Whether the gain, if any, was ordinary income or long-term capital gain; and (4) Whether the petitioner is entitled to a deduction for legal fees of $581.38 paid during 1947 in connection with his wife's estate. Findings of Fact The petitioner filed his individual tax returns for the calendar years 1946 and 1947 with the collectors of internal revenue for the First and Third Districts of New York, respectively. He prepared his returns on the cash basis. He has been engaged since prior to 1925 in the business of manufacturing automobile accessories. The petitioner in 1925 acquired more than 2900.182 acres of land located in the Town of Brookhaven, County of Suffolk, State of New York. The land consisted of two contiguous parcels, one formerly owned by Clarence G. T. Smith and the other formerly owned by William E. T. Smith. The stated purchase price for the Clarence Smith property was $750,000 on which the petitioner paid $45,000 in 1925 pursuant to two contracts made with Clarence. The *198 petitioner acquired title to the William Smith property in some way not shown herein. The petitioner and his wife used a residence on the William Smith land as a summer residence from 1929 until his wife died in August 1944. The petitioner made improvements on the residence and landscaped the surrounding grounds during 1928 and 1929 at a cost of more than $49,000. The petitioner was unable and failed to make payment between 1930 and 1940 of taxes and mortgage charges affecting the entire property. A contract was executed in 1932 between the petitioner and the Bankers Trust Company as Executor and Trustee under the Will of Clarence Smith covering the acquisition and retention of the Clarence Smith property. This contract cancelled the original contracts made in 1925. The petitioner, in accordance with the new contract, relinquished title to part of the Clarence Smith property and was released from a mortgage thereon (the details of which are not shown by the record), received credit for the sum of $45,000 previously paid by him on the original contracts and executed his bond and mortgage for $400,000 covering the remaining Clarence Smith property, plus the William Smith property. *199 The petitioner, while he owned the property herein, tried unsuccessfully to sell the entire property by listing it with Ernest A. L'Ecluse, a real estate broker. The County of Suffolk, at various tax sales during the period 1932 to 1940, sold the entire property in order to satisfy the tax liens thereon which had arisen as a result of the petitioner's failure to pay the real estate taxes. The lands were sold to the County of Suffolk at the tax sales and they could have been conveyed to the County by the County Treasurer. The petitioner's rights of redemption had expired prior to December 31, 1943. The petitioner, L'Ecluse, and Charles H. Stoll, an attorney, on December 2, 1943, executed a joint venture agreement reciting that the petitioner was the owner in fee simple of approximately 2900 acres of land in the Town of Brookhaven, County of Suffolk, State of New York, upon which there were outstanding tax sales and unpaid taxes estimated at $85,000 and two outstanding mortgages, one known as the "French Mortgage" in the amount of approximately $15,000 and the other held by the Bankers Trust Company in the amount of $400,000; the petitioner maintained a residence on a portion *200 of the premises which he desired to retain with approximately 25 acres of land; litigation had been instituted by the County of Suffolk to bar the claims of the petitioner and the mortgagees; it was necessary to compromise and adjust the liabilities against the property so that they might be reduced to assure a liquidating price in excess of the liability; it was necessary that funds be procured to cover adjustment of the taxes and other expenses in connection with the salvage venture; Stoll was willing to furnish advice, to utilize his knowledge and experience in connection with real estate operations, taxes and mortgage foreclosures and to assist in the settlement of the Bankers Trust Company mortgage; and L'Ecluse, having since 1926 devoted his time and attention to the problems concerning the property, its management, taxes, mortgages and other negotiations, all involving a substantial amount of money, had offered to continue to devote his time and efforts and monies in the venture. The parties agreed that: 1. The property owned by Tolfree, except his residence and 25 acres of land, should constitute and be the subject of a joint venture and Tolfree constituted himself trustee *201 for the benefit of the joint venture. 2. Tolfree should execute any and all deeds, releases or documents necessary to convey to the Town of Brookhaven certain portions of the property with roads and rights of way thereto which should be used as a park and the conveyance of which should be consideration for the cancellation of the taxes and tax sales then affecting the premises. 3. Tolfree should advance sums of money not exceeding $1,000. 4. Stoll should conduct negotiations for the purpose of reducing the liabilities against the property and finance or cause to be financed any settlement of the Bankers Trust mortgage, such sums to be a first lien on the property and to be repaid before any other disbursements, and would make every effort to secure from the Bankers Trust Company releases covering the conveyance to the Town of Brookhaven. 5. The Bankers Trust Company mortgage would be settled at $35,000, any additional sum should have the approval of the petitioner before it could become fixed in so far as the joint venture was concerned and the petitioner would execute any necessary bonds or mortgages covering the property including the residence and the 25 acre parcel to provide *202 funds to liquidate the Bankers Trust Company mortgage. 6. The petitioner would assume full responsibility for the "French Mortgage" in the sum of approximately $15,000. 7. L'Ecluse would continue to perform services and make investment in money, time and overhead, except that he would not be required to pay any taxes or portions of the mortgage liens, to the end that the joint venture might be brought to a successful conclusion. 8. If the tax sales, taxes and Bankers Trust Company mortgage were settled, the property, with the exception of the residence and 25 acres, would be placed on the market and, if possible, sold within a year at a price not less than $150,000, any reduction in that price requiring the consent of Stoll. 9. The parties would participate in the joint venture, after the taxes, tax sales and Bankers Trust Company mortgage had been paid and disposed of, as follows: Tolfree would retain the residence and 25 acres free from all taxes and mortgage and receive an arbitrary sum of $10,000 together with a sum equal to any mortgages which he may have executed covering the house and 25 acres, L'Ecluse would receive 10 per cent of the net selling price of the property, *203 excluding the property retained by the petitioner, less the sums expended in the payment of taxes to the County of Suffolk, Stoll would receive all money advanced by him or for which he had incurred liability, plus one-third of the proceeds from the sale of the property, excluding the property retained by the petitioner, less the $10,000 to be paid to the petitioner, the amount paid for the settlement of the Bankers Trust Company mortgage, taxes, the amount paid to L'Ecluse and the amounts paid to Stoll by way of reimbursement, and the petitioner would receive the remaining two-thirds of the proceeds less the above items. The joint venture used a cash basis of accounting. The petitioner, Stoll and L'Ecluse, after the execution of this agreement, took steps to recover and restore the title to the property to the petitioner. The petitioner made the necessary payments to discharge the "French Mortgage." The Bankers Trust Company mortgage was settled for $35,000 and assigned to Ivo Matkovic. Negotiations were conducted by the parties to the joint venture, Ivo Matkovic and officials of the Town of Brookhaven and the County of Suffolk. These resulted in a resolution by the Board *204 of Supervisors of the County of Suffolk on June 19, 1944 accepting an offer by the petitioner dated January 20, 1944, as amended April 27, 1944 and June 1 and 6, 1944, to convey to the County certain land on the ocean front, roads and rights of way and to make a payment of $25,000. The resolution recited that "the settlement of the tax situation on the properties" and "the acquisition of a park area, rights of way, and other considerations * * * are to the benefit of the Town of Brookhaven and the County of Suffolk." It directed that any and all documents or instruments as were necessary to give the title to the remaining property free and clear of taxes and tax liens, be executed and delivered to the petitioner. The petitioner and his wife on July 20, 1944 executed two deeds granting to the County of Suffolk the part of the property to be used for park, roads and rights of way. The County Treasurer on July 31, 1944 executed a deed quit-claiming to the petitioner the remaining property. These deeds were delivered. The deed from the County to the petitioner was placed in escrow with the County Attorney pending a final payment by the joint venture which was made after part of the land *205 was sold. The parties to the joint venture entered into an agreement on July 10, 1944 which reduced the arbitrary sum to be paid to the petitioner from $10,000 to $4,000. The parties to the joint venture and Lillian D. Patterson entered into an agreement on or about December 21, 1944 known as the "Tolfree Joint Venture." This agreement set forth that the Bankers Trust Company mortgage in the face amount of $400,000 had been settled at $35,000 and was now held by Ivo Matkovic, that Patterson had offered to advance $25,000 for the purpose of obtaining the assignment of that bond and mortgage and that the "French Mortgage" had been disposed of and satisfied. The parties to the "Tolfree Joint Venture" adopted and reaffirmed the terms of the original joint venture of December 2, 1943, as amended, and in addition thereto agreed that: 1. Patterson would advance $25,000 for the purchase from Ivo Matkovic of the assignment of the Bankers Trust Company bond and mortgage which assignment would run to the name of Patterson individually. 2. Patterson would execute releases from the mortgage whenever required to execute sales of the premises or any portion thereof. 3. The petitioner would *206 satisfy the "French Mortgage." [Which he apparently already had done - see above.] 4. All monies accruing to the joint venture would be deposited in a checking account in the name of "Tolfree Joint Venture," withdrawals from which would require the signature of either Tolfree or Patterson and Stoll or L'Ecluse. 5. The following order of preference in payments, obligations and distributions of proceeds would govern: (1) Taxes to the County of Suffolk in the amount of $19,459.13; (2) current taxes; (3) reimbursement of Patterson to the extent of $25,000; (4) the creation of a tax fund not to exceed $5,000; (5) the payment to the petitioner of the sum of $6,426.35 paid by him on account of back taxes; (6) payment to Ivo Matkovic the sum of $10,000 being the balance due on the Bankers Trust Company bond and mortgage; and (7) distribution to the joint venturers in accordance with the provisions of the original joint venture agreement. Any distribution to Patterson was to be made out of the petitioner's share as agreed upon between the petitioner and Patterson. 6. The petitioner would be allowed an additional sum of $15,000 if the house and 25 acres were sold with his consent. *207 None of the joint venture agreements was ever recorded. They did not constitute liens on the property. The purpose of the joint venture was to recover title to the property and sell it. The costs incurred in recovering the property and restoring it to the petitioner amounted to $66,037.58. Negotiations were carried on, after recovery of the property, for the sale of a part of it to Walter T. Shirley and the petitioner individually entered into an agreement with Shirley, on March 13, 1945, for the sale to Shirley of a part of the property, including the petitioner's residence and the surrounding acreage for $61,578. The petitioner had just previously consented orally to the sale of the residence and 25 acres. The petitioner individually entered into another agreement with Shirley on March 14, 1945 for the sale to Shirley of an additional part of the property for $25,000. The March 13, 1945 agreement is in part as follows: "THE PRICE is SIXTY-ONE THOUSAND FIVE HUNDRED SEVENTY-EIGHT DOLLARS ($61,578.), payable as follows: FIVE THOUSAND DOLLARS ($5,000.), receipt whereof is hereby acknowledged, in cash, on the execution of this contract; FIVE THOUSAND DOLLARS ($5,000.) ON THE *208 FIRST DAY OF APRIL, MAY, JUNE, JULY, and AUGUST, 1945, and the balance of THIRTY-ONE THOUSAND FIVE HUNDRED SEVENTY-EIGHT DOLLARS ($31,578.) to be paid as follows: FIFTEEN THOUSAND SEVEN HUNDRED EIGHTY-NINE DOLLARS ($15,789.) on THE FIRST DAY OF NOVEMBER, 1945, and FIFTEEN THOUSAND SEVEN HUNDRED EIGHTY-NINE DOLLARS ($15,789.) ON THE FIRST DAY OF FEBRUARY, 1946. "The seller represents that on the payment of TWENTY THOUSAND DOLLARS ($20,000.) to the Suffolk County Treasurer under a compromise of taxes, deeds now held in escrow by such County Treasurer, will be delivered to seller, conveying the premises herein described free and clear of taxes. Therefore, it is agreed that until the deed is obtained by the Seller from the County Treasurer all payments under this contract are to be made to the order of DAVID C. BENNETT, of 44 Whitehall Street, New York, N. Y., as attorney for EDWARD R. TOLFREE, to be held by him in escrow, subject to the following conditions: "1. The payments made by the purchaser shall be released from such escrow by DAVID C. BENNETT, only to obtain said deed from the County Treasurer. "2. That upon the receipt of sufficient funds from either the purchaser or the *209 seller, DAVID C. BENNETT may release the payments made by the purchaser for the purpose of obtaining the delivery of such deed from the County Treasurer. "3. This escrow shall expire and the payments made by the purchaser are promptly to be refunded to him if the seller shall forfeit or release his right to obtain said deeds from the County Treasurer. "4. DAVID C. BENNETT shall pay over such funds in escrow on June 2, 1945, to the County Treasurer if an extension of time be granted to the seller to perform his agreement of compromise of taxes until such date. "At any time after the payment by the purchaser of TWENTY THOUSAND DOLLARS ($20,000.) but not before July 1, 1945 he shall have the right upon the payment of TEN THOUSAND DOLLARS ($10,000.) to obtain a deed, free and clear of all encumbrances except as aforesaid, with United States Internal Revenue stamps attached, which deed shall be a Bargain and Sale deed with covenant against grantor's acts, and shall be duly executed and acknowledged by the seller, at the seller's expense, so as to convey to the purchaser the fee simple to the main house and fifteen acres surrounding the same, together with the buildings and improvements *210 thereon * * *. Said payment of TEN THOUSAND DOLLARS ($10,000.) for the release of said main house and fifteen acres shall be applied on the account of the purchase price herein set forth and in reduction of the same, but such payment shall not postpone the next payment required to be paid on account of this contract, except if the next payment be the last payment due hereunder of FIFTEEN THOUSAND SEVEN HUNDRED EIGHTY-NINE DOLLARS ($15,789.) then such payment should be reduced by the sum of TEN THOUSAND ($10,000.) paid for the release of the property mentioned in this paragraph. * * *
"The purchaser shall have the right to anticipate any and all of the payments herein set forth and upon full payment of the purchase price, to receive a deed to all of the premises herein. * * *
"The purchaser shall assume the insurance upon the main house and fifteen acres surrounding the same, together with the buildings and improvements thereon, and pay the premiums when they become due. Any loss suffered or damages to said premises, shall be at the risk of purchaser and the benefits derived from such insurance, shall be paid to purchaser and by him paid over to the seller on account of *211 the purchase price. "In the event that the purchaser shall fail to make the payments as and when the same shall become due hereunder, and upon fifteen days' written notice to the purchaser of such default and the failure of the purchaser during the said fifteen days to cure such default, this contract may at the option of the seller, be declared breached. "The parties agree Ernest A. L'Ecluse brought about this sale and seller agrees to pay the brokerage commission therefor. "Taxes shall be apportioned as of the first day of December, 1945, except the apportionment of taxes upon the main house and fifteen acres surrounding the same, together with the building and improvements thereon, shall be apportioned as of the date of delivery of a deed to the same. "* * * Three separate deeds shall be executed by the seller * * * and delivered to the seller's attorney * * * forthwith after the execution of this agreement to be held by him in escrow and to be promptly delivered to the purchaser upon the receipt of said payments in accordance with the terms hereof." The March 14, 1945 agreement is in part as follows: "THE PRICE IS TWENTY-FIVE THOUSAND DOLLARS ($25,000) payable as follows: *212 ONE THOUSAND DOLLARS ($1000.), receipt whereof is hereby acknowledged, in cash, on the execution of this contract; ONE THOUSAND DOLLARS ($1000.) on the first day of April, 1945; and ONE THOUSAND DOLLARS ($1000.) on the first day of each and every month thereafter until the full purchase price is paid. No interest is to be paid on unpaid balances. "Taxes shall be apportioned as of December 1, 1945. * * *
"The deed shall be delivered upon the receipt of said payments * * * on or before the first day of March 1947. "The purchaser shall have the right to anticipate any and all of the payments herein set forth and upon full payment of the purchase price, to receive a deed to all of said premises." In addition, the March 14, 1945 agreement contained provisions similar to those in the March 13, 1945 agreement regarding execution and delivery in escrow of the deed, the $20,000 payment to the county and payments by the purchaser in escrow to the seller's attorney. The petitioner executed deeds to the property on May 22, 1945 which were held in escrow by his attorney who had no authority to deliver them to Shirley until all of the purchase money was paid. The deeds were delivered *213 to Shirley on February 20, 1946 in the case of the March 13, 1945 contract and on April 17, 1947 in the case of the March 14, 1945 contract. The sum of $45,789 on account of the price of $61,578 was received during 1945 and the balance of $15,789 was received during 1946. The sum of $10,000 on account of the price of $25,000 was received during 1945, $12,000 was received during 1946 and the balance of $3,000 was received during 1947. This money was paid directly to the petitioner's attorney in escrow until the balance due the County of Suffolk was paid. The deed from the County of Suffolk was received about a month after the contracts were signed and was recorded April 10, 1945. Shirley took immediate possession of the property. The sales took place during the year 1945. These sales to Shirley were the only sales of the property and the money paid by him was the only money ever received by the joint venture, prior to the end of 1947. The joint venture maintained a separate bank account to which all receipts were deposited and from which disbursements were made. The sales did not include all of the property subject to the joint venture. The sales were in the ordinary course of the *214 joint venture's business. The petitioner never received the $15,000 to be allowed him for his consent to sell the house and 25 acres. The petitioner received a check in the amount of $4,000 from the joint venture on March 29, 1946. This was the sum to be paid to the petitioner in accordance with the joint venture agreement. The purpose or use of it has not been shown. The petitioner filed a timely income tax return for 1943 in which no mention was made of the land on Long Island. He filed an amended return for 1943 in 1947 in which he reported income from hunting rights on that land in the amount of $1,850. The Revenue Agent's Report for 1943 made the following adjustment: "(f) Capital Loss $1,000.00 "Taxpayer owned unimproved property in Suffolk County, N. Y., which was sold by the county for delinquent taxes in 1940. In 1943 after the expiration of the period of redemption, the property was deeded to the county. "Taxpayer is entitled to a long term capital loss measured by the basis of the property to him. The cost allocated to the land disposed of in 1943 is $18,500.00. The long term capital loss of … is allowed to the extent of $1,000.00 as limited by sec. 117(d)(2) I.R.C. *215 " The petitioner filed a timely return for the year 1944 in which no mention was made of the Long Island property. He filed an amended return for the year 1944 in 1947 which reported income from hunting rights on that land in the amount of $1,100. The petitioner filed an income tax return for the year 1945 in which no mention was made of the land on Long Island. He filed an amended income tax return for the year 1945 in 1947 in which he reported the sale of the Long Island land as follows: "EDWARD R. TOLFREE, "AMENDED RETURN (FORM 1040), "FOR YEAR 1945, "SCHEDULE D-2 "Sale of land (from holdings known as 'Tangier Property') to Walter T. Shirley on March 13, 1945 and March 14, 1945. The Tangier Property (comprising, in all, 2,900,182 acres in Suffolk County, New York) was acquired by deed dated July 31, 1944 and is owned (a) two-thirds by the taxpayer and (b) one-third by the following named persons, who are (with respect to such property) joint venturers with taxpayer: "Charles H. Stoll
Lillian D. Patterson
Estate of William L. Ecluse
"Total proceeds from sale of 1,108.94 acres: Cash received in 1945
$55,789.00
Additional amount to be received after 1945
30,789.00
Total
$86,578.00
Total tax cost of Tangier Property
(2,900.182 acres)
$61,030.00
Tax cost per acre ($61,030 divided by 2,900.182)
$ 21.0435
Less - Total tax cost of land sold in 1945
(1,108.94 times $21.0435)
23,335.98
Gross profit from sale
$63,242.02
Less - Total expenses of sale: Brokerage fees
$ 6,100.00
Legal fees and expenses
8,436.20
Federal documentary stamps
33.00
County Clerk of Suffolk County
7.00
Maps
65.81
Appraisal
25.00
Stamps on deed and release on mortgage
223.20
Suffolk County property taxes
859.09
Total
$15,748.30
Less - Allowance for rentals received for shooting rights
on land
500.00
15,248.30
Total gain from sale
$47,993.72
Taxpayer's share of gain (2/3 of $47,993.72)
$31,995.81"
*216 The petitioner paid the taxes shown to be due on all returns from 1943 through 1947. Examinations and audits of the petitioner's returns and amended returns for the years 1943, 1944 and 1945 were made by the Commissioner who determined overassessments for each of the three years. The petitioner on his returns for the years 1943 through 1947 claimed no loss from the tax sales or the expiration of his rights of redemption. The petitioner, in his timely filed income tax returns for 1946, reported income of $333.34 from the "shooting rights on vacant land." The petitioner did not report any gain from the sale of land. He reported gross income of $55,564.48. The partnership return filed by the Tolfree Joint Venture for the calendar year 1946 reported income of $500 from shooting rights of which $300 was shown as the petitioner's share. It also reported a long-term capital gain in the amount of $25,373.13 from "Tangier Property" acquired in December 1943 and sold in February 1946 for a gross sales price of $61,578. The partnership return shows that the petitioner's share of the capital gain to be taken into account was $7,611.94. The notice of deficiency, which incorporated a Revenue *217 Agent's Report, increased the petitioner's income for the year 1946 by the amount of $30,337.66 "to reflect taxpayer's distributive share of income from the Tolfree Joint Venture." It also eliminated the income of $333.34 from shooting rights "as a transaction already reflected in the return of the Tolfree Joint Venture." The notice of deficiency was based on adjustments made to the income of the partnership increasing ordinary income, as reported, by $37,396.10, which the revenue agent explained was the "net gain from sale of property * * * held for sale to customers in the ordinary course of the taxpayer's business." The revenue agent further explained that the $30,337.66 portion of the income of the joint venture for 1946 charged to the petitioner included $15,000 credited to the petitioner's account by the joint venture and disallowed as a part of the basis of the properties acquired for sale by the joint venture and $4,000 representing an amount included in the basis of the property by the joint venture but disallowed because it was actually paid to the petitioner. He charged the balance of the $30,337.66 to the petitioner to represent his 60 per cent of net income of the joint *218 venture. The partnership return for 1947 filed by the Tolfree Joint Venture shows deductions for real estate taxes of $3,298.79 and insurance of $15.94, a total of $3,314.73 of which $1,988.84 or 60 per cent was shown as the petitioner's share. It reported a long-term capital gain of $10,381.74 from "Tangier Property" as if acquired in December 1943 and sold in February 1947 for a gross sales price of $25,000, of which $3,114.52 was to be taken into income by the petitioner as his share of 50 per cent of the long-term capital gain. The petitioner, in his income tax return for 1947, claimed an ordinary loss of $1,988.84 and reported net capital gain of $3,114.52, both from the Tolfree Joint Venture, and showed a net capital loss of $9,585.63. The Commissioner determined that the petitioner's income from the joint venture should be increased by $7,101 "to reflect taxpayer's distributive share of income from the Tolfree Joint Venture." The notice of deficiency was based on adjustments made to the partnership return by a revenue agent increasing ordinary income by $11,826.46, the net gain from the sale of property held for sale to customers in the ordinary course of business, and *219 disallowing a deduction for insurance of $8.54 for lack of substantiation. This produced net partnership income of $8,520.27 of which $5,112.16 was charged to the petitioner as his distributive share. The adjustment from a loss of $1,988.84 to income of $5,112.16 was $7,101. The Commissioner allowed the petitioner a capital loss deduction of $1,000, the maximum allowable. The notice of deficiency for the years 1946 and 1947 was mailed on January 29, 1952. The petitioner signed no waivers extending the period for the assessment and collection of taxes for the year 1946. The Commissioner has failed to show that the petitioner omitted gross income from his return for 1946 in excess of 25 per cent of the gross income shown on that return. The petitioner was the sole residuary legatee of the estate of his wife, Aline Gorren Tolfree, who died in 1944. The petitioner paid $581.38 in 1947 for legal services and expenses in connection with the administration of the estate of his deceased wife. The Commissioner disallowed legal fees of $581.38 "paid in connection with preparation of last will and testament as personal." The petitioner paid medical expenses of $817.42 during the year 1947. *220 He deducted $332.13 on his 1947 return which was the excess over 5 per cent of his adjusted gross income as reported. The Commissioner disallowed medical expenses deducted for the year 1947 in the amount of $330.68 because of an increase in adjusted gross income resulting from other adjustments to petitioner's income. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner concedes that the three-year period for assessment and collection of the deficiency and the addition determined by him with respect to 1946 had expired before he sent out the notice of deficiency. Section 275(c) provides that if the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per cent of the amount of gross income stated in the return, a five-year period for assessment and collection shall apply. The notice of deficiency was not too late if that five-year period applies, and the question is whether the Commissioner has sustained his burden of proof to show that the petitioner omitted properly includible gross income from his return for 1946 equal to 25 per cent of the gross *221 income shown on that return. C. A. Reis, 1 T.C. 9 [Dec. 12,875]. The petitioner reported gross income of $55,564.48 on his return for 1946, and the Commissioner must show that he had additional gross income in excess of $13,891.12 which was properly includible in that return. The Commissioner contends that the petitioner failed to report $15,000 of income which was properly includible in his return for 1946 representing an amount allegedly credited to the petitioner's account by the joint venture for consenting to the sale of his residence and some surrounding property. The $15,000 was never paid to the petitioner and the evidence in the record does not support the revenue agent's statement that it was credited to the petitioner on the books of the joint venture [1] or that it represented a part of his distributive share of the net income of the joint venture for 1946 separate from or in addition to his share of the proceeds of the sales of the real estate. The Commissioner has failed to prove that this $15,000 item was erroneously omitted from the 1946 income of the petitioner. The Commissioner also claims that the petitioner erroneously omitted income of $4,000 paid *222 to the petitioner in 1946 under the joint venture agreement. The petitioner contends that he used the $4,000 to pay taxes or other expenditures incident to the sales. The evidence does not show exactly what he did with it but this does not help the Commissioner either. The Commissioner contends that the petitioner erroneously omitted from gross income about $11,000 representing his distributive share of the 1946 profits from the sale in 1946 of the property covered by the agreement of March 13, 1945. He has taken the position that the sale covered by the agreement of March 14, 1945 took place in 1947 and he does not contend that the petitioner had any income from that sale in 1946. The evidence shows, however, that both sales took place in 1945. The petitioner had obtained clear title to the properties, had executed deeds transferring the properties to the purchaser, had placed those deeds in escrow to be delivered to the purchaser when the purchase prices had been fully paid, and had received on behalf of himself and the other participants in the joint venture substantial portions of the purchase prices during 1945. *223 The purchaser had taken possession and had assumed various obligations consistent with sales in 1945. The finding has been made that both sales took place during the year 1945. Harris Trust & Savings Bank, Executor, 24 B.T.A. 498; Union Pacific Railroad Co., 32 B.T.A. 383, 391, affd. 86 Fed. (2d) 637; Nina J. Ennis, 17 T.C. 465, 469, dismd. and affd. Fed. (2d) , (August 5, 1952). The parties have stipulated that costs of $66,037.58 were incurred in connection with the properties after the tax sales. The Commissioner has not shown what part thereof related to each of the two properties sold. The petitioner and the joint venture both used the cash receipts method of reporting income. Therefore, if $66,037.58 were the entire basis, as contended by the Commissioner, there would be no income from the sales, as both parties agree, until the payments of the purchase price exceeded that amount. Harden F. Taylor, 43 B.T.A. 563, 568, affirmed on other grounds 128 Fed. (2d) 885; Harold W. Johnston, 14 T.C. 560. The total payments in 1945 and 1946 exceeded $66,037.58 by $17,540.42 of which 60 per *224 cent would be $10,524.25, an amount less than 25 per cent of the gross income reported by the petitioner for 1946. So the Commissioner loses even if the bases are limited to costs after the tax sales. Furthermore, he has not shown that all or some part of the petitioner's old bases did not survive the tax sales. The Commissioner contends that the original bases of the petitioner for the properties was lost as a result of the tax sales prior to the 1944 settlement. The correctness of that contention depends upon whether some or all of the sales were invalid, as a result of which the petitioner was not deprived of his title to some parts or all of the property. The Commissioner relies upon a presumption which he says arises under the laws of New York that every conveyance executed by a County Treasurer to a purchaser of property at a tax sale, which has been recorded for two years, is conclusive evidence that the sale and proceedings were regular. Such presumptions do not shift the burden of proof, Herbert L. Damner, 3 T.C. 638; J. Z. Todd, 3 T.C. 643, approved on this point but remanded on other grounds 153 Fed. (2d) 553, rehearing denied 153 Fed. (2d) 553; *225 Rosemary Herold Lazard, 5 T.C. 277, 280, affd. 153 Fed. (2d) 348; E. C. Olson, 10 T.C. 458, 463, although they may have some probative value. Cf. Washington Post Co., 10 B.T.A. 1077, 1079; F. Brody and Sons Co., 11 T.C. 298, 306. The petitioner's rights could have been extended had he been an occupant of the house or of any portion of the property, or both. The Commissioner has failed to show that the petitioner did not qualify as an occupant or whether a proper notice was given to him as such by the purchaser and, consequently, the presumption of the validity of the sales might not have arisen up to July 1944 on sales made after July 1934. Furthermore, the evidence does not show that the County Treasurer executed conveyances as a result of the tax sales or that any conveyance which he executed was recorded or when any was recorded. Also, the law relied upon further provides that all such conveyances and the taxes and tax sales upon which they are based shall be subject to cancellation by reason of any defect in the proceedings affecting the jurisdiction upon constitutional grounds provided action is taken within five *226 years from the expiration of the period allowed by law for the redemption of lands sold at the particular sale sought to be cancelled. The petitioner contended throughout in his negotiations with the County of Suffolk and in this proceeding that the sales were invalid on constitutional grounds because no map had been filed as was required to support the tax assessments. This contention was never litigated in the courts of New York, but the fact that he made a settlement in 1944 and obtained clear title to a part of the lands is some indication that his claim was not an empty one. Thus, the Commissioner has not shown that the petitioner did not retain all or some substantial part of his original basis, and that failure alone is fatal to the Commissioner's contention because if he retained even a relatively small part of his original bases, it would wipe out all of the 1946 gain for which the Commissioner must contend. The Commissioner has failed to show that the five-year period allowed by section 275(c) applies to 1946 and it follows that there is no deficiency or addition for that year. The petitioner has the burden of proof to overcome the presumption of correctness attaching *227 to the determination of the Commissioner on all issues relating to 1947 and no favorable inferences may be drawn to aid him in the absence of proof. The evidence fails to show that any part of the petitioner's old bases for gain or loss survived the tax sales. Cf. Coon Run Fuel Co., 20 T.C. 122, affd. 209 Fed. (2d) 187. The only basis shown is that stipulated and all of it was returned through the 1945 and 1946 payments of purchase price, leaving none to offset 1947 payments of purchase price. The total payments of purchase price in 1947 amounted to $3,000. The petitioner has failed to show that that profit was capital gain. The petitioner is taxable upon his share of the $3,000 profit for 1947 as ordinary income. The petitioner deducted for 1947 and the Commissioner disallowed $581.38 paid for legal services and other expenses in connection with the administration of the estate of the deceased wife of the petitioner. He claims that the amounts are deductible under section 23(a)(2) but he cites no authority to support that argument. They were expenses of the estate of the wife and were not expenses of the petitioner. He is not allowed a deduction for paying *228 the expenses of another. Furthermore, it does not appear that any income producing property came to the petitioner from that estate which he might have been managing, conserving or maintaining for himself within the meaning of section 23(a)(2). Cf. Regulations 111, Section 29.23(a)-15(k). The amount of medical expenses for 1947 was $817.42 and a simple computation will disclose the amount of the deduction, if any, which will result from those payments. No other of the several issues raised requires decision. Decision will be entered under Rule 50. Footnotes
1. That was under his theory that there was no sale in 1945.↩