Morris Kates and Betty Kates, et al. [1] v. Commissioner. Kates v. Commissioner
Docket Nos. 1208-66 - 1210-66, 1212-66 - 1215-66.
United States Tax Court
T.C. Memo 1968-264; 1968 Tax Ct. Memo LEXIS 35; 27 T.C.M. (CCH) 1423; T.C.M. (RIA) 68264; November 20, 1968. Filed Dean S. Butler and Dudley M. Lang, Suite 1100 Wilflower Bldg., 615 S. Flower St., Los Angeles, Calif., for the petitioners. Myron A. Weiss, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: In these consolidated cases, respondent determined the following deficiencies in petitioners' income taxes: *36 Dkt. No.
Petitioners
1958
1959
1960
1961
1962
1208-66
Morris and Betty Kates
$744.39
$ 413.62
1209-66
Leona G. Kates
2,594.48
1210-66
Jack R. Kates
2,594.49
1212-66
Charles and Lorraine Forsch
1,400.47
11,138.01
52.54
1213-66
Nathan and Lillian Kates
9,630.02
2,409.64
1214-66
Nathan Kates
3,521.43
1215-66
Lillian Kates
3,539.42 1424 Concessions have been made by petitioners. The only issue remaining is whether Rodney & Company during the years in issue was eligible to elect to be taxed under subchapter S of the Internal Revenue Code. [2] Our decision on this issue will also determine the allowable medical expense deductions in docket Nos. 1209-66, 1210-66 and 1212-66. Findings of Fact Some of the facts are stipulated and are so found. Petitioners Morris and Betty Kates, husband and wife, resided in Los Angeles, California, at the time their petition in the instant case was filed. Their original, amended, and second amended joint Federal income tax returns for the calendar year 1958, and their original and amended *37 joint returns for the calendar year 1960, were filed with the district director of internal revenue at Los Angeles, California. Petitioner Leona G. Kates resided in San Fernando, California, at the time her petition in the instant case was filed. Her Federal income tax return for the calendar year 1960 was filed with the district director of internal revenue at Los Angeles, California. Petitioner Jack R. Kates resided in San Fernando, California, at the time his petition in the instant case was filed. His Federal income tax return for the year 1960 was filed with the district director of internal revenue at Los Angeles, California. Petitioners Nathan Kates and Lillian Kates, husband and wife, resided in San Fernando, California, at the time their petition in the instant case was filed. His Federal income tax return for the calendar year 1960, and their joint Federal income tax returns for the calendar years 1961 and 1962 were filed with the district director of internal revenue at Los Angeles, California. Petitioners Charles Forsch (hereinafter sometimes referred to as Charles) and Lorraine Forsch resided in Los Angeles, California at the time their petition in the instant *38 case was filed. Their original, amended, second amended, and third amended joint Federal income tax returns for the calendar year 1958; their original, amended, and second amended returns for the calendar year 1959; and their original amended joint Federal income tax returns for the years 1960, 1961 and 1962, were filed with the district director of internal revenue at Los Angeles, California. At all relevant times Charles was a partner in Roscoe Hardware Company, a partnership whose principal activity was the operation of a retail hardware store. The partners in Roscoe, in addition to Charles, were his brother Jack Forsch (hereinafter sometimes referred to as Jack), and his father Louis Forschleiser (hereinafter sometimes referred to as Louis). In addition to engaging in the retail hardware business, Roscoe also made a number of outside investments. These investments were made and handled by Charles. Roscoe's funds were at Charles' disposal and he would use them to invest as he saw fit. Though some of the investments which Charles made for the partnership were in the partnership name, it was common for Charles to hold property in his own name, which property was in fact that of *39 Roscoe Hardware. Rodney & Company (hereinafter sometimes referred to as Rodney) is a California corporation engaged in the business of operating a bowling alley in Sun Valley, California. The bowling alley is located in a building owned by the F.K. & K. Company, a partnership in which Roscoe Hardware has an interest, such interest being held in the name of Charles Forsch. During 1957, Rodney stock was owned by Sanford Kohl and one other individual. Kohl at that time wished to pay certain of the corporation's debts and also to obtain 100 percent ownership of Rodney, but he did not have sufficient funds. Sometime in 1957 he approached Charles asking for a loan of $40,000 to be secured by his Rodney stock. Charles was agreeable and on October 10, 1957, he arranged to have $40,000 deposited with the Sun Valley Bank in Sun Valley, California, for the benefit of Kohl in return for Kohl's $40,000 five-percent note in Charles' favor. By December 31, 1957, all of the issued and outstanding stock of Rodney & Company, consisting of 200 shares, was owned by Sanford Kohl and his wife, Frances. At the time the above loan was made, Kohl asked Charles to assume an equity position in Rodney, *40 as Kohl did not have enough cash to cover the daily needs of the business. Charles took Kohl's suggestion under advisement and when Kohl agreed to allow Morris Kates to take an active role in the management of Rodney, he agreed to invest in Rodney & Company. 1425 On January 1, 1958, Sanford and Frances Kohl entered into an agreement calling for them to convey 100 shares of Rodney stock to Charles Forsch, Nathan Kates, Jack R. Kates, Morris Kates and Eugene V. Klein. The consideration recited was $80,000, $40,000 of which was represented by the cancellation of the $40,000 loan arranged by Charles. The agreement did not mention Roscoe Hardware. As regards the partnership or its members, it referred only to Charles, and his signature did not on its face purport to be signed in any representative capacity. The final provision of the agreement, however, makes the following reference to the Prudential Picture Tube Company, a portion of whose stock was held in Charles' name, but which stock was an investment and asset of Roscoe: IN FURTHER CONSIDERATION OF THE ABOVE, it is agreed that First Party will pay a sum equivalent to onehalf, but not exceeding $15,000.00, of any losses *41 of operation or upon liquidation sustained in the future by Prudential Picture Tube Company, a California corporation, when called upon to do so by the Second Parties herein. As a result of the above transaction, the 100 shares conveyed by Sanford and Frances Kohl were distributed to the following individuals and held in their names as follows: Charles Forsch
23- 9/17
Nathan Kates
23- 9/17
Jack R. Kates
23- 9/17
Morris Kates
17-11/17
Eugene V. Klein 11-13/17
100 shares
On July 15, 1958, the remaining 100 Rodney shares in Kohl's possession were purchased by Rodney & Company and canceled. At the same time other transfers of Rodney shares were made between the shareholders, so that Charles Forsch, Nathan Kates, Jack R. Kates, Morris Kates, and Eugene V. Klein each had 20 shares of stock in his name. On January 1, 1961, Jack Kates and Morris Kates in separate agreements transferred all of their Rodney shares to the remaining shareholders. As a result of the transfers, Rodney stock was held equally in the names of Charles Forsch, Nathan Kates and Eugene V. Klein. Under the terms of the agreement Jack Kates and Morris Kates received approximately $13,000 *42 for their shares, consisting of cash and the assumption of certain debts. As in the agreement with Kohl, Roscoe Hardware was not mentioned and Charles' signature did not purport to show him acting as agent for Roscoe. On January 1, 1962, Eugene Klein entered into an agreement calling for him to transfer his shares of Rodney stock to Charles Forsch and Nathan Kates. The consideration recited was approximately $1,500 net for the stock. As a result of this agreement all of the outstanding Rodney shares were held equally in the names of Charles Forsch and Nathan Kates, and as in the prior agreements, Roscoe Hardware was not mentioned and Charles' signature did not indicate that he was acting for anyone other than himself. In the same agreement, however, Klein also conveyed his interest in F.K. & K. Company to Charles Forsch and Nathan Kates, and such purchases (as well as prior purchases) of F.K. & K. stock made by Charles were purchased for and were assets of Roscoe Hardware. There is no evidence in the record as to where Charles obtained the $40,000 amount which was loaned to Sanford Kohl, and which was subsequently applied to purchase Kohl's Rodney stock. Whatever payments were *43 required for the subsequent purchases of Rodney stock were at least in part made through earnings distributions of the F.K. & K. Company. No physical evidence was introduced which showed the treatment of the payments by F.K. & K. on its books and records, nor was there any physical evidence introduced to show how either Charles or Roscoe Hardware accounted for the funds used to purchase Rodney stock. The only evidence introduced was a ledger sheet of Roscoe Hardware showing amounts representing checks to Rodney, drawn on Roscoe Hardware's account, and erroneously added to an unrelated investment. From 1960 through 1962, Roscoe reported Rodney & Company on its U.S. Partnership Return of Income as an investment valued at $9,976. The value of the investment was erroneous, as the total represented amounts pertaining to both Rodney and an unrelated investment. Only approximately $2,000 of that amount represents checks drawn on Roscoe Hardware in favor of Rodney & Company. No entries correcting Roscoe's books and records for the erroneous amounts had been made to the date of trial of the instant case. Pursuant to section 1372(a) of the Internal Revenue Code *44 , Rodney & Company filed a timely election to subject itself to taxation under the subchapter S provisions, beginning with the 1958 calendar year. Although the election was accompanied by consents of record shareholders, the consents by the shareholders' wives, which were required for a valid election, were not at that time filed. 1426 The parties agree that the wives' failure to sign the consents invalidated Rodney's election for the years 1958 and 1959. They agree further that this defect was cured on December 17, 1962, when the corporation again elected to be taxed under subchapter S, beginning with the 1958 calendar year. At this time it filed the necessary consents, and validly refiled its 1958 and 1959 returns under a procedure permitted by a retroactive amendment to section 1371 of the Code. For the calendar year 1960 and thereafter, Rodney properly filed a timely election, accompanied by the proper consents. At all pertinent times, Rodney has not had more than one class of stock; its stock was not owned by more than ten shareholders; and at no time was Rodney a member of an affiliated group as defined in section 1504 of the Code. All of its shareholders "of record" *45 were individuals who were citizens of the United States. During no taxable year did the corporation either derive more than 80 percent of its gross receipts from sources outside of the United States or more than 20 percent of its gross receipts from royalties, rents, dividends, interest, annuities, and sales or exchanges of stocks and securities. On his original income tax return for the calendar year 1958, Charles reported income from Rodney & Company as follows: [3]
CHARLES AND LORRAINE FORSCH, 6960 Camrose, Los Angeles, Calif.
INCOME TAX RETURN 1958 INCOME
PercentageInterest
Partnership Profitor Loss
Total
Charles Forsch, Jack Forsch, and Louis Forschleiser, DBA Roscoe Hardware Co., 8165 San Fernando Rd., Sun Valley, Calif.
1/3
$52,753.70
$17,584.57
FKK Co., 8165 San Fernando Rd., Sun Valley, Calif.
1/3
2,203.95
734.65
EFF AND KAY Co., 8165 San Fernando Rd., Sun Valley, Calif.
1/3
- (552.48)
- (184.16)
Forsch & Fishkin, 8109 San Fernando Rd., Sun Valley, Calif
1/3
481.00
160.33
Purdential Tube, San Fernando, Calif.
1/3
- (2,082.89)
- (694.30)
Rodney and Co., 8256 San Fernando Rd., Sun Valley, Calif
1/3 - (7,086.13)
- (2,362.04)
Totals $45,717.15
$15,239.05
OTHER INCOME
Directors Fees:
Strathern Savings & Loan, Sun Valley, Calif
$ 325.00
Sun Valley Investment Co., Sun Valley, Calif 833.25
Total
$ 1,158.25
*46 A similar schedule appears on Jack Forsch's 1958 return. [4] Louis Forschleiser's income tax returns were not introduced into evidence. In Charles' amended return for the calendar year 1958, the following explanation appeared: AMENDED INCOME TAX RETURN 1958 LOSS TAKEN ON 1958 RETURN
Prudential Tube, 754 Arroyo Ave., San Fernando, Calif
[2,082.89)
Rodney & Co., 8256 San Fernando Rd., Sun Valley, Calif (7,086.13)
Total
[9,169.02)
Louis Forschleiser, 1/3 of Partnership Loss
(3,056.34)
Jack Forsch, 1/3 of Partnership Loss
(3,056.34)
Charles Forsch, 1/3 of Partnership Loss (3,056.34)
Total
[9,169.02) 1427 *10 HAVE BEEN NOTIFIED THAT THE INTERNAL REVENUE SERVICE HAS DISALOWED[sic] THE ELECTION TO TREAT THE INCOME TAX RETURNS OF THE ABOVE FIRMS AS A PARTNERSHIP BASIS. THEREFORE WE ARE FILING AMENDED RETURNS.
1958
Amended
Total Increase
Louis Forschleiser
$ 3,775.46
$ 4,797.86
$1,022.40
Jack Forsch
2,780.19
3,690.56
910.37
Charles Forsch 4,034.38
5,079.69
1,045.31
Total $10,590.03
$13,568.11
$2,978.08
*47 A similar explanation appears on Jack's amended 1958 return. In Charles' second amended return for the calendar year 1958, dated June 20, 1963, the following explanation was given: CHARLES AND LORRAINE FORSCH We were informed by the Treasury Department that they disallowed the deduction of the loss from The Rodney & Co. and the Prudential Picture Tube Co. that we deducted on our 1958 return. Both of these companies filed their Income Tax Return at that time on Form 1120 S - as a partnership. In view of this, amended returns at that time were filed and additional tax paid. However, we are presently informed that the Treasury Department amended its laws affecting Small Business Corporation, allowing the deductions of losses of its fiscal period. It appears, however, that all the stockholders of the Prudential Picture Tube Company did not consent the Corporate Election to be taxed as a partnership; we, therefore, eliminated their loss on our present amended return. The loss from Rodney & Company was approved by all stockholders to be taxed as a partnership. This accounts for our filing the present amended return for years 1958 and 1959. We, therefore, request a refund plus *48 interest at the rate of 6% per annum, as follows: Income Tax Paid on First Amended Return
$966.89
Income Tax Amended Presently
x163.79
Refund Due Us
$803.10 A similar explanation appears on Jack's second amended return. In his third amended return for the calendar year 1958, dated April 9, 1964, Charles reported a loss of $7,086.13 as his share of Rodney & Company's income. On Charles' original income tax return for the calendar year 1959, no Rodney & Company income or loss is shown. His amended return for that year, dated June 20, 1963, includes Rodney & Company earnings as follows: *10 CHARLES AND LORRAINE FORSCH 6960 CAMROSE LOS ANGELES, CALIFORNIA INCOME TAX RETURN 1959
Income Partnership
PercentageInterest
Partnershipprofit or loss
Total
Roscoe Hardware Co., 8165 San Fernando Road, Sun Valley, California
1/3
$43,637.03
$14,545.68
F K & K Co., 8165 San Fernando Road, Sun Valley, California
1/3
2,209.84
736.62
EFF & Kay Co., 8165 San Fernando Road, Sun Valley, California
1/3
2,804.95
934.98
Forsch & Fishkin, 8109 San Fernando Road, Sun Valley, California
1/3
108.94
36.32
Forsch & Fishkin, 8109 San Fernando, Sun Valley, California
1/3
(1,214.00)
(404.66)
Rodney and Company, 8256 San Fernando Road, Sun Valley, California
1/3
(7,356.51) (2,452.17)
Total
$13,396.77
*49 Jack's amended return contains a similar schedule showing substantially similar amounts. In his second amended return for 1959, dated April 9, 1964, Charles reported a $7,356.51 loss as his share of Rodney & Company income. On Charles' Federal income tax return for the calendar year 1960, Rodney & Company income was reported as follows: 1428 *10
ROSCOE HARDWARE Co. PARTNERSHIP INCOME TAX RETURN 1960
INCOME
Charles Forsch, Jack Forsch, and Louis Forschleiser, DBA ROSCOE HARDWARE Co., 8165 San Fernando Rd., Sun Valley, Calif.
$59,179.25
OTHER INCOME
F K K Co., 8165 San Fernando Rd., Sun Valley, Calif
1,935.25
E F F and KAY, 8165 San Fernando Rd., Sun Valley, Calif.
4,914.32
FISHKIN & FORSCH, 8109 San Fernando Road, Sun Valley, Calif.
1,531.00
Tropicana[sic] Apts., 8133 San Fernando Rd., Sun Valley, Calif.
- (2,216.00)
Rodney and Co., 8256 San Fernando Road, Sun Valley, Calif. - (11,616.26)
TOTAL INCOME $53,727.56
REPORTED BY
Charles Forsch - 1/3 of Profit
$17,909.19
Jack Forsch - 1/3 of Profit
17,909.19
Louis Forschleiser - 1/3 of Profit
17,909.18
TOTAL $53,727.56 A similar schedule showing the same items *50 and amounts was also reported on Jack's 1960 Federal income tax return. In his amended 1960 income tax return, dated April 9, 1964, Charles reported a $11,616.26 loss as his share of Rodney & Company income. On Charles' Federal income tax return for the calendar year 1961, Rodney & Company earnings were reported as follows: Charles Forsch, Jack Forsch and Louis Forschleiser, DBA ROSCOE HARDWARE Co., 8165 San Fernando Rd., Sun Valley, Calif.
INCOME
$38,227.08
OTHER INCOME OR LOSSES
FKK Co., Sun Valley, Calif
(2,307.85)
EFF KAY Co., Sun Valley, Calif
2,466.59
FISHKIN & FORSCH, Sun Valley, Calif
363.00
TROPICANO APTS., Sun Valley, Calif
(5,581.00)
RODNEY & Co., Sun Valley, Calif
(19,535.64)
FISHKIN & FRIEDMAN, Sun Valley, Calif
45.00
DEVONSHIRE MANOR, INC., Sun Valley, Calif
4,985.00
OWENSMOUTH PROPERTY Co., Van Nuys, Calif (832.05)
TOTAL $17,830.13
Charles Forsch - 1/3 of Profit
$5,943.37
Jack Forsch - 1/3 of Profit
$5,943.38
Louis Forschleiser - 1/3 of Profit 5,943.38
TOTAL
$17,830.12 Jack's Federal income tax return for the calendar year 1961 contains a similar schedule. On his amended 1961 Federal income *51 tax return, dated July 24, 1965, Charles reported a $19,535.64 loss as his share of Rodney & Company income. On Charles' Federal income tax return for the calendar year 1962, Rodney & Company earnings are shown as follows: CHARLES FORSCH, JACK FORSCH, AND LOUIS FORSCHLEISER 8165 San Fernando Road Sun Valley, California
PARTNERSHIP INCOME Roscoe Hardware Co. - Sun Valley, Calif
$54,523.10
Fishkin and Friedman - Sun Valley, Calif
374.00
Fishkin and Forsch - Sun Valley, Calif
(463.00)
Tropicano Apartments, Burbank, Calif
(4,715.99)
Owensmouth Property Saticoy & Topanga Canyon, Van Nuys, Calif
[4,136.42)
Horowitz Forsch and Kates Investment Woodman and Magnolia - Van Nuys, Calif
(654.00)
Rodney & Co. - Sun Valley, Calif
(10,437.07)
F K K Co. - Sun Valley, Calif (2,879.35)
TOTAL $31,612.26
CHARLES FORSCH
1/3 $10,537.42
JACK FORSCH
1/3 10,537.42
LOUIS FORSCHLEISER
1/3 10,537.42
TOTAL
$31,612.26 1429 In addition, an investment credit attributable to Rodney & Company is shown as follows: CHARLES FORSCH, JACK FORSCH, AND LOUIS FORSCHLEISER PARTNERSHIP INVESTMENT CREDIT Rodney and Co. 8237 San Fernando *52 Rd. Sun Valley, Calif.
INVESTMENT CREDIT
$3,725.38
1/2 $1,862.69
CHARLES FORSCH
$620.89
JACK FORSCH
620.90
LOUIS FORSCHLEISER 620.90
TOTAL $1,862.69 Similar items, amounts and schedules are shown on Jack's Federal income tax return for the calendar year 1962. On his amended 1962 Federal income tax return, dated July 24, 1965, Charles reported a $10,437.07 loss as his share of Rodney & Company income. For the years 1959 through 1962, Charles' return shows that Rodney & Company paid him $1,200 in wages each year. Similar amounts did not appear on any of the returns filed by Jack. Though some of the schedules on Charles' returns list income from the partnerships Fishkin-Forsch and Fishkin-Friedman as Roscoe Hardware income, the interest held in Charles' name was, in fact, an asset and investment of Charles. For the years 1958 through 1962, the other petitioners reported Rodney income in accordance with subchapter S provisions of the Code. In his statutory notices of deficiency, respondent disallowed all losses of Rodney reported by all petitioners for the years 1958 through 1962, on the basis that Rodney's election under subchapter S *53 was invalid. Ultimate Finding of Fact The stock of Rodney & Company in Charles Forsch's name was, for the years 1958 through 1962, an asset of Roscoe Hardware Company, a partnership. Opinion Petitioners, for some or all of the years - 1958 through 1962 - deducted losses incurred by Rodney & Company on their individual Federal income tax returns in accordance with the provisions of subchapter S (section 1371- 1377) of the Internal Revenue Code. The question before us is whether Rodney was eligible to elect to have its income taxed under the subchapter S provisions. In order to make a valid election, a corporation must meet the definition of a "small business corporation," as set forth in section 1371(a) of the Code. [5]Section 1371(a)(2) provides that no such 1430 corporation shall have as a shareholder a person who is not an individual. It is respondent's position that the Rodney & Company stock in the name of Charles Forsch was beneficially owned by Roscoe Hardware Company, a partnership, and that therefore Rodney & Company was ineligible to elect subchapter *54 S treatment. Accordingly, he determined that Rodney's shareholders could not reflect its losses for the years 1958 through 1962 on their individual Federal income tax returns. Petitioners do not dispute respondent's contention that, it Roscoe Hardware did own Rodney stock, the election was invalid. The plain language of the statute and its legislative history support this contention. See the relevant language from S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1959-2 C.B. 192 and 1958-3 C.B. 922 at 1138. Also cf. Fulk & Needham, Inc. v. United States, an unreported case ( M.D. N.C. 1968, 22 A.F.T.R. 2d 5389). *55 It is also clear in the subchapter S area, as in other areas of the tax law, that the incidents of taxation depend upon who the real owners of the stock are, not where mere naked title lies. [6] See Rupe Investment Corporation, 30 T.C. 240 (1958), affd. 266 F. 2d 624 (C.A. 5, 1959); Reuben Stiefel, 9 T.C. 576 (1947); American Circus Joint Venture, 39 B.T.A. 605 (1939); William A. Matern, 21 B.T.A. 384 (1930), affd. 61 F. 2d 663 (C.A. 9, 1932); Thomas F. Willmore, 18 B.T.A. 1044 (1930); Jerry Galatis, 8 B.T.A. 213 (1927). Petitioners' position, however, is that Roscoe Hardware never had a beneficial or any other sort of interest in Rodney & Company. They contend that at all relevant times the stock of Rodney in Charles Forsch's name was in fact solely an investment of Charles. At the threshold we point out that *56 respondent's determination has the presumption of correctness. Though there may be certain California presumptions in regard to ownership of property in petitioners' favor, "the conflict of presumptions resolves itself in favor of the respondent, and the [petitioners] * * * [retain] the burden of proof." Herbert L. Dammer, 3 T.C. 638 (1944); J. Z. Todd, 3 @T.C. 643 (1944), remanded on other grounds 153 F. 2d 553 (C.A. 9, 1945). Apart from respondent's presumption of correctness, the strongest factor against petitioners is the fact that Roscoe Hardware's partnership returns of income for the years 1960, 1961 and 1962, report Rodney & Company as an investment of that partnership. In addition, Roscoe's partners, Charles and Jack Forsch and Louis Forschleiser [7] reported Rodney & Company losses as partnership losses on their individual returns. Petitioners insist that *57 this reporting was a mistake caused by carelessness on the part of an accountant - Eli Katz (hereinafter sometimes referred to as Eli). Charles testified that, from the first Rodney stock purchase, he instructed Eli that Rodney & Company was his own investment and was to be treated accordingly. Eli testified that those were his instructions and that he simply forgot this fact continuously when preparing information to be submitted to the accountant who made up the income tax returns for Roscoe, Charles, Jack and Louis. Jack further confirmed Charles' testimony, stating that he had been told that he was not included in the Rodney investment. Sanford Kohl, the original owner of Rodney & Company stock, also testified that Charles had mentioned that, due to a previous bad investment with his father and brother, his investment in Rodney was to be a personal one. Though we have given the above testimony careful consideration, we simply cannot accept the fact that the reporting of Rodney & Company as Roscoe's investment was one big mistake. Were this a case of one item automatically being carried over year after year on a series of income tax returns, we might be inclined to sympathize *58 with petitioners' characterization. But such is not the case here. In the instant case, Rodney & Company's subchapter S difficulties were primarily responsible for Charles, Jack, and presumably Louis, filing a whole series of amended returns. As late as 1963, amended returns for 1958 and 1959 were being filed for the specific purpose of including Rodney & Company losses on the three partners' 1431 returns, with the 1958 returns containing detailed explanations of the reasons for filing the amended returns. We find it difficult, if not impossible, to believe that an accountant would prepare a series of amended returns and that Charles, Jack and Louis would sign the returns at such a late date without any discussion at all as to the reason for the change. Respondent points out that it was not until April 1964 that Charles filed his amended returns for 1958 and the years thereafter claiming all Rodney losses for himself. We agree with him that this delay casts a cloud of considerable suspicion over petitioners' mistake theory. The evidence presented does not indicate that Charles or Roscoe Hardware's financial affairs were so complicated that it would take six years to discover *59 that Rodney & Company was not a partnership asset. As respondent further points out, the documentary evidence supports the theory that Roscoe Hardware was the beneficial owner of Rodney stock. Admittedly, the various agreements involving the acquisition of Rodney stock and the stock certificates themselves indicate that Charles alone was the purchaser. But at least two of the agreements in Charles' name included matters which pertained solely to Roscoe Hardware. As shown in the findings of fact, the transaction with Sanford Kohl conveying Rodney stock contained a guarantee by the seller of Rodney stock to reimburse the purchasers for losses incurred by Prudential Picture Tube Company, a company whose stock in Charles' name was an asset of Roscoe Hardware. Similarly, the agreement with Eugene V. Klein conveying Rodney stock also called for Klein to convey an interest in the F.K. & K. Company to Charles et al. And we have found that the entire interest of F.K. & K. Company in Charles' name was, at all relevant times, an asset of Roscoe Hardware. If Charles were purchasing Rodney stock for his own account in these two transactions, he was wearing two hats at the time he entered into *60 the transactions, while appearing to wear only one. Though we do not know where the money came from for all the Rodney purchases, Charles admitted that distributions from F.K. & K. Company, a partnership asset, were used to pay for some of the Rodney stock and the testimony of Eli Katz was that there was $2,000 in separate $500 checks drawn on Roscoe Hardware in favor of Rodney & Company. Charles and Eli testified that Charles had a personal drawing account and that any personal expenditures Charles made were charged to it. Yet even after the amended returns were filed in 1964 and to the date of trial, no correcting entries were made to adjust Charles' account for the Rodney stock payments through Roscoe. Similarly, no evidence was introduced to show that payments from F.K. & K. Company used to purchase Rodney stock were ever adjusted by Roscoe or any of the partners so that Charles was solely accountable for them. Petitioners were quite willing to introduce a page from a ledger which showed that Rodney & Company amounts had been added to another investment to obtain the erroneous figure $9,976 shown as the value of Rodney & Company on the partnership returns. It would have been *61 to their advantage to have also introduced records showing that amounts used to purchase Rodney stock were in fact charged to Charles. Their failure to do so makes us suspect that at least part of the funds Charles used to purchase Rodney stock were provided by Roscoe Hardware and were never intended to be charged to Charles personally. Thus we have a case where the entire record indicates (and we now hold) that partnership funds were used to purchase Rodney stock in transactions in which the partnership had an interest. The partnership included the Rodney stock on its partnership returns as an asset of the partnership, and the partners themselves, through a series of amended returns spanning a fiveyear period, consistently treated Rodney income as partnership income. We find and hold, in light of all the evidence, that Rodney & Company stock during all relevant years was in fact an asset of Roscoe Hardware. This means that a partnership was an owner of Rodney stock, and under section 1371(a) of the Code, Rodney was not a "small business corporation." It could not elect to be taxed under the subchapter S provisions and its shareholders could not reflect its losses on their individual *62 Federal income tax returns for the years in issue. Decisions will be entered for the respondent. 1432 Footnotes
1. Cases of the following petitioners are consolidated herewith: Leona G. Kates, docket No. 1209-66; Jack R. Kates, docket No. 1210-66; Charles Forsch and Lorraine Forsch, docket No. 1212-66; Nathan Kates and Lillian Kates, docket No. 1213-66; Nathan Kates, docket No. 1214-66; and Lillian Kates, docket No. 1215-66.↩
2. All references are to the Internal Revenue Code of 1954.↩
3. All of Charles' returns are joint returns in the names of Charles and Lorraine Forsch. For convenience, reference to Charles' returns hereinafter refers to joint returns filed by Charles and Lorraine.↩
4. Similarly, Jack's returns are joint returns in the names of Jack and Pauline Forsch, and reference to Jack's returns refers to returns filed by Jack and Pauline.↩
5. SEC. 1371. DEFINITIONS. (a) Small Business Corporation. - For purposes of this subchapter, the term "small business corporation" means a domestic corporation which is not a member of an affiliated group (as defined in section 1504) and which does not - (1) have more than 10 shareholders; (2) have as a shareholder a person (other than an estate) who is not an individual; (3) have a nonresident alien as a shareholder; and (4) have more than one class of stock.↩
6. We note that the Memorandum Opinion of this Court cited by petitioner also supports this proposition. See Ray Guzowski, T.C. Memo. 1967-145↩.
7. Though Louis Forschleiser's income tax returns were not introduced into evidence, the schedules shown on Charles' and Jack's returns indicate that Louis also filed similar schedules with his returns at the same time as his sons.↩